Cecil Lavelle ARCHER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 210–84, 211–84.

Court of Criminal Appeals of Texas, En Banc.

Feb. 5, 1986.

Tom Crum, Waxahachie, for appellant.

Gene Knize, Co. Atty., and Daniel L. McBride and Kevin D. Chester, Asst. Co. Atty's., Waxahachie, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted of incest and rape of a child and was sentenced to ten years incarceration at the Texas Department of Corrections for each offense. Appellant filed separate appeals and, because they shared a common ground of error, the Waco Court of Appeals consolidated the cases. As those same grounds of error have been presented here for review we also consolidate.

The Waco Court of Appeals in an unpublished opinion overruled appellant's ground of error concluding that while Art. 36.03, V.A.C.C.P. or "The Rule" may have been violated by a conversation between two State's witnesses without the court's permission, appellant was not harmed according to the two-step criteria set up in *Haas v. State*, 498 S.W.2d 206 (Tex.Cr.App.1973). We granted appellant's petition for discretionary review to determine whether or not the Court of Appeals was correct in limiting the harm analysis for a violation of Art. 36.03 to the criteria posed in *Haas*, supra.

The record reflects that appellant and his ex-wife Lena May had two children, Lori and Glenn, prior to their divorce in 1976 or 1977. Subsequent to that divorce, each married other individuals and Lena retained custody of both children. Appellant was allowed visitation on alternate weekends and the children normally spent those weekends at appellant's house.

On July 31, 1982, appellant picked up Lori from the Mays' house at 10:00 a.m. and then visited his dentist until 11:30 a.m. He did not pick up Glenn at that time as he was busy undergoing a physical examination for school sports.

Lori testified that subsequent to leaving the dentist's office, appellant took her to his house and the offenses took place. She stated that after this they returned to pick up Glenn at the Mays' house.

Appellant's version of the facts surrounding the incident differs from Lori's. He testified that he did not return to his house after leaving the dentist's office at 11:30 a.m. Appellant stated that he went directly to the Mays' house from the dentist's office where he picked up Glenn and proceeded to his [appellant's] parents' home, arriving at 11:45 a.m. Appellant's parents and his brother testified that appellant arrived with both children at 11:45 a.m. They particularly noticed the time because they always ate at 12:00 noon.

During a break in the proceedings, the State's attorney stepped outside the courtroom and talked to Lena and Darrel May, Lori's mother and stepfather, who had previously been placed under "The Rule" as per Art. 36.03, V.A.C.C.P. The prosecutor mentioned that "something had

come up" and he needed to know the time that they picked Glenn up on July 31st after his football physical.[1] After this conversation, the prosecutor called both Lena and Darrel May to testify. Both offered substantially the same answer when asked about the time they picked Glenn up. They each said they picked him up around 12:00 noon implying that appellant could not have picked Glenn up at their house until that afternoon, perhaps as late as 2:00 p.m. Glenn's testimony corroborated these times.

Through cross-examination, appellant discovered that the discussion had occurred between Lena and Darrel May. He moved to strike the testimony and moved for a mistrial because of the violation of "The Rule." Both the objection and the motion for mistrial were overruled.

Appellant contends that the trial judge abused his discretion in allowing Lori's mother and stepfather to testify as to the time they picked Glenn up from his physical, as this testimony violated Art. 36.03.

Art. 36.03, V.A.C.C.P. reads in part:

At the request of either party, the witnesses on both sides may be sworn and placed in the custody of an officer and removed out of the courtroom to some place where they cannot hear the testimony as delivered by any other witness in the cause. This is termed placing witness under the rule.

The purpose of this rule, as stated in *Cook v. State*, 30 Tex.App. 607, 18 S.W. 412 (1892), is "to prevent the testimony of one witness from influencing the testimony of another." Further, as a corollary to Art. 36.03, Art. 36.06, V.A.C.C.P., describes the instruction to be given to witnesses placed under the rule. It expands Art. 36.03 instructing witnesses that they are not to confer with each other without court permission. Art. 36.06 reads:

Witnesses placed under the rule, shall be instructed by the Court that they are not to converse with each other or with any

other person about the case, except by permission of the Court.

In the instant case such an instruction was given and it was violated. However, a violation of the rule is not itself reversible error. *Hass,* supra; *Murphy v. State,* 496 S.W.2d 608 (Tex.Cr.App.1973). A violation of the rule may not be relied upon for reversal of the case unless it is shown that the trial court abused its discretion in allowing the alleged violative testimony to be elicited at trial. The ultimate test for determining when an abuse of discretion has occurred is whether harm to the defendant has resulted by allowing the violative testimony to be introduced. *Haas,* supra.

In *Haas,* supra, the Court established two criteria for determining whether the defendant was in fact harmed by the violation of the rule: namely:

(1) Did the witness actually hear the testimony of the other witness, and

(2) Did the witness's testimony contradict the testimony of the witness he actually heard.

In the instant case, neither *Haas* criteria was met; however, in order to give full effect to Art. 36.03 and the related instruction required by Art. 36.06, these criteria must be expanded to embrace other situations in which the rule has been violated. *Haas,* supra, was correct but the analysis was limited to the situation where a witness hears testimony from the opposition and later takes the stand and contradicts that testimony he actually heard.

The first *Haas* criteria is too narrow to give full effect to Art. 36.03 and Art. 36.06. A clear reading of these articles makes it evident that not only are witnesses to avoid hearing others' testimony, they are also not to confer among themselves without court permission. Thus, the first *Haas* criteria should be expanded to include a determination of whether the witnesses have conferred. The better question is, did the wit-

---

1. Counsel is permitted to discuss the case with witnesses who have previously been placed under the rule out of the presence of each other.

*Clayton v. State,* 652 S.W.2d 950 (Tex.Crim.App. 1983).

ness actually hear the testimony or confer with another witness without court permission.

The second criteria is likewise too restrictive. In the situation where two or more witnesses testifying for the same side in a criminal case have violated the rule, it makes no sense to say that their testimony must conflict in order to show harm. Of course, in most cases the opposite will occur. When two State or defense witnesses confer outside the courtroom on a matter pertinent to the case their testimony is likely to coincide, not conflict. See *Hougham v. State*, 659 S.W.2d 410 (Tex.Cr.App. 1983), where Judge Clinton, in a concurring opinion, suggested an alternative to this second *Haas* criteria to encompass this situation.

■ We hold that in such situations, where two or more State witnesses violate the rule by conferring on an issue bearing on the guilt or innocence of the accused and about which they later testify, injury or prejudice flows from testimony that either corroborates another witness for the prosecution or contradicts defensive testimony on that issue. See *Perry v. State*, 160 Tex.Cr.R. 8, 266 S.W.2d 171 (Tex.Cr. App.1954); *Crawford v. State*, 165, Tex. Cr.R. 147, 305 S.W.2d 362 (Tex.Cr.App. 1957) and *Wilson v. State*, 158 Tex.Cr.R. 334, 255 S.W.2d 520 (Tex.Cr.App.1953). Also, the Court in *Day v. State*, 451 S.W.2d 508 (Tex.Cr.App.1970), suggested this expansion:

> There has been no showing that the trial court abused its discretion in permitting Campbell to testify. His testimony *did not coincide with any material testimony of the other witnesses for the State and did not contradict the testimony of any defense witness that he heard.* Id. at 509–510 (emphasis added)

■ In the instant case the rule was technically violated by the attorney's conference with two witnesses at the same time. However, there is no evidence to indicate that a discussion took place between Lena and Darrell May during which an issue material to the case was decided.

The following testimony was elicited from Darrell May:

Q. The time that you think that Cecil picked Glenn up, is that based upon the time that you think that you picked Glenn up from the physical?

A. I know approximately what time we picked him up at the physical and also took a little boy home.

Q. What time did you pick him up?

A. Around 12:00.

Q. How do you know that time?

A. How do I know that time? Because when we were sitting out at the high school I know I looked at my watch and it was a little around 11:30 then and I told my wife, I went inside to see how much longer they were going to be and then I came back out and we went and got two cold drinks and came back to the school and we still waited.

Q. Have you discussed this with your wife out here in the hall today?

A. When she came out a minute ago, no, sir.

Q. I am talking about any time today.

A. Yes.

Q. Was Mr. Knize present all the time that you discussed it?

A. Only he was—He walked off and then we looked at each other and asked if—she asked me how can anyone remember the exact times that are so far back and I told her it wasn't in my capability.

Q. Now,—Well, now you are testifying to the exact time.

A. No.

Q. How are you doing that?

A. No, I said approximately around 12:00. I can't say it was 11:59 or 12:01.

Q. Out in the hall today, was that the sole extent of your conversation with your wife about these times?

A. Yes.

Q. Did you all arrive at a time out there in the hall?

A.  No, there's no way to arrive at a definite time because—to pinpoint a definite time because the time elapsed—I could not say—like I say, it was 11:59 or 12:01, no way. It was around 12:00.

MR. CRUM; Your Honor, I think we may have a violation of the rule here.

MR. KNIZE: No, we don't.

MR. CRUM: We would ask the Court to strike the testimony of Mr. and Mrs. May as being in violation of the rule.

THE COURT: Overrule it.

MR. CRUM: Note our exception and we also would move for a mistrial.

THE COURT: Overruled.

MR. CRUM: Note our exception.

### REDIRECT EXAMINATION
BY MR. KNIZE:

Q.  Mr. May, during the recess, did I come out there and ask you and your wife and Lori about these times:

A.  Yes.

Q.  Okay. Did I tell you that something had come up I needed to know about it?

A.  Yes.

Q.  So I was asking you questions out there so I would know what questions to ask you over here? Is that correct?

A.  Yes.

Q.  And you heard the Judge say that you could, you and your wife or the witnesses could talk to one of the lawyers? Is that right?

A.  Yes.

The record does not reflect that any specific time was discussed or agreed upon, thus it was not an abuse of discretion for the trial judge to deny appellant's request that the testimony of Lena and Darrell May be excluded.

Accordingly, the judgment of the Court of Appeals is affirmed.