Gabriel **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. C14–87–00819–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 27, 1989.

Rehearing Denied June 1, 1989.

E. Stanley Topek, Houston, for appellant.

Deborah Mantooth, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

JUNELL, Justice.

Appellant entered a plea of not guilty before the court to the offense of aggravated robbery. TEX.PENAL CODE ANN. § 29.03. He was convicted and the court assessed punishment, enhanced under TEX. PENAL CODE ANN. § 12.42(c), at imprisonment for forty years. We affirm.

Appellant raises three points of error, contending the evidence is insufficient to support the verdict; that two witnesses were permitted to testify in violation of "the rule;" and that the trial court erred in permitting the complaining witness to testify, since appellant contends she was incompetent to testify.

For the sake of convenience we will first consider appellant's points of error relating to the disqualification of witnesses, then turn to the matter of the sufficiency of the evidence to support the verdict. In his second point of error, appellant complains that the trial court abused its discretion in permitting Officers Campbell and Wharton to testify at trial after they had violated "the rule." Appellant refers specifically to the witness rule created by TEX. CRIM.PROC.CODE ANN. arts. 36.05 and 36.06 and TEX.R.CRIM.EVID. 613. According to appellant, the rule was violated after it was invoked, when the officers discussed their testimony with each other and with the prosecutor.

When faced with an alleged violation of the witness rule, the first question which must be asked is whether a witness actually heard testimony or conferred with another witness. *Archer v. State,* 703 S.W.2d 664, 666–667 (Tex.Crim.App.1986). If that question is answered in the affirmative, and it is shown two or more witnesses violated the rule by conferring on an issue bearing on the guilt or innocence of the accused and about which they later testify, it must also be shown that prejudice or injury results from testimony that either corroborates another witness for the prose-

cution or controverts defensive testimony on the same issue. 703 S.W.2d at 667. The standard to be applied is whether the trial court abused its discretion in admitting the testimony. 703 S.W.2d at 668; *Guerra v. State*, 771 S.W.2d 453, 470 (Tex. Crim.App.1988).

In the instant case it is uncontroverted that the witness rule was invoked. Defense counsel stated that he observed a witness who had previously testified, Fredieu, conferring in the hallway outside the courtroom with the prosecutor, Officer R.L. Campbell and another officer.

Officer Campbell testified that he talked with Officers G.D. Wharton and Villatrey [sic] before testifying. He also admitted talking to Fredieu, but only concerning a collateral matter about which Campbell did not testify. Campbell said he did not discuss the facts of the case with Officer Wharton or the prosecutor. While Campbell testified that he read the offense report with Officer Wharton, he said that they did not discuss the report. Campbell admitted to another incident in the courtroom where he was asked by the prosecutor whether he recognized several witnesses. The trial court permitted Officer Campbell to testify over appellant's objection, but would not allow him to testify about whether he recognized the witnesses Fredieu and David Garza.

Officer G.D. Wharton testified that he talked in the hallway with the prosecutor and Officer Campbell for only a few minutes. Wharton said he discussed his involvement in the case with the prosecutor and also talked with her about evidence and individual witnesses. Officer Wharton testified that he did not talk about what any witness said at the scene. Wharton insisted that his entire testimony was based on the offense report and his own recollection, except with respect to the matter of who filed charges against appellant.

Both police officers testified that they had not been informed of the invocation of the rule, a fact admitted to by the prosecutor. Officer Villatrey did not testify.

From the testimony of the officers, it is clear that Officer Campbell did not testify about any matter discussed with the prosecutor or another witness. Officer Wharton testified only about the identification of appellant by Yolanda Gonzalez, a matter which apparently was not referred to in the hallway conversation. In addition, Wharton related the fact appellant had been initially picked up as a suspect to car theft, a matter not relevant to appellant's guilt or innocence and apparently not discussed among the officers.

Most of the officers' testimony was devoted to questions about whether, in fact, the rule had been violated. There was little testimony about the case itself. It cannot be said that the testimony of the one officer in any manner corroborated that of the other because they testified about completely different aspects of the case, and there was no overlap in testimony. It is not at all clear that the first prong of the *Archer* rule is satisfied. In order to violate the rule, it is necessary that two (or more) witnesses confer on an issue bearing on the guilt or innocence of the accused *and about which they later testify*. 703 S.W.2d at 667. (Emphasis added). Implied in the *Archer* holding is that witnesses in violation of the rule must both testify on a common subject. That did not occur here. In addition, we fail to perceive how appellant was harmed by the purported violation of the rule. Since their testimony covered entirely different evidentiary ground, there could hardly be collusion. In an overabundance of caution, the trial court prevented Officer Campbell from testifying on a particular topic. We hold that he did not abuse his discretion in permitting the officers to testify about the limited areas which their testimony covered. Moreover, the testimony of the officers did not establish the essential elements of the offense charged. We hold, beyond a reasonable doubt, that appellant was not harmed or injured in any way by such testimony. TEX.R.APP.P. 81(b)(2). Appellant's second point of error is overruled.

In his third point of error, appellant asserts that the trial court erred by failing to disqualify the testimony of Lillian Pope,

the complainant, asserting that she was an incompetent witness under TEX.R.CRIM. EVID. 601(a)(2).

TEX.R.CRIM.EVID. 601(a) creates a presumption that a person is competent to testify. *Long v. State*, 770 S.W.2d 27, 29 (Tex.App.–Houston [14th Dist.] 1989, no pet.). The testimony of a witness will only be excluded where questioning convinces the court the witness appears not to possess sufficient intellect to relate transactions with respect to which he or she is interrogated. *Id.*; TEX.R.CRIM.EVID. 601(a)(2). The current rule regarding competency of witnesses is virtually identical to its predecessor. TEX.CRIM.PROC.CODE ANN. art. 38.06, which it replaces, with the exception that there is no longer a requirement that the court find a child or other person whose competency is challenged understands "the obligation of an oath." *Long, supra,* at p. 29.

Since Rule 601 continues the "general rule of competency" formerly codified in Article 38.06, prior precedent construing that article continues to apply. *Id.* The ruling of the trial court in permitting a witness to testify will not be reversed unless it is shown based on the entirety of the witness' testimony that the trial court abused its discretion. *See Garcia v. State,* 573 S.W.2d 12, 14 (Tex.Crim.App. [Panel Op.] 1978); *Fields v. State,* 500 S.W.2d 500, 502 (Tex.Crim.App.1973).

■ There are three elements that must be considered by the court in determining whether a witness is competent to testify. A witness must be competent to observe intelligently the events in question at the time of their occurrence, plus he or she must have the capacity of recollection and narration. The capacity to narrate involves the ability to understand questions posed and to frame intelligent answers, and to understand the moral responsibility to tell the truth. *Watson v. State,* 596 S.W.2d 867, 870 (Tex.Crim.App.1980). In *Watson,* the Court of Criminal Appeals stated the following rule for capacity:

> If a person afflicted with a physical or mental disability possesses sufficient intelligence to receive correct impressions

of events he sees, retains clear recollection of them and is able to communicate them through some means, there is no reason for rejecting his testimony.

■ In the instant case, appellant contends that the complainant, Lillian Pope, had previously suffered a nervous breakdown, had Alzheimer's disease, and that, as a result, as demonstrated by her testimony, she was incompetent to testify. Appellant cites to specific statements made by Mrs. Pope in an effort to discredit her competency. Included is her testimony that her husband had died a few days ago, that she did not know how old she was, that she thought the day of her court appearance was Saturday, that someone came in her house with a pistol, and that the incident the basis of this prosecution happened many years back.

When taken out of the context of her entire testimony, Mrs. Pope's answers raise troubling questions about her competency as a witness. Though she admitted to having had a nervous breakdown in the past year, her testimony was sufficiently coherent and intelligible concerning the incident in question that it deserved to be heard. Although Mrs. Pope could not tell her age, she did know the year when she was born, 1907. When defense counsel suggested her doctor had diagnosed her as having Alzheimer's disease, Mrs. Pope rejoined, "I didn't know what that was. I never heard of it before." The complainant repeatedly acknowledged that she knew the difference between telling the truth and telling a lie. When the prosecutor showed her a jacket and talked about its color in a demonstration of her ability to distinguish the truth from a lie, Mrs. Pope clearly passed the test.

Although there are some inconsistencies in her testimony, Mrs. Pope's account of the incident resulting in this prosecution is lucid and purposeful. The fact that there are inconsistencies in testimony does not in itself render a witness incompetent. *Sanders v. State,* 727 S.W.2d 670, 673 (Tex.App. —Texarkana 1987, no pet.); *Clark v. State,* 558 S.W.2d 887, 890 (Tex.Crim.App.1977). When asked why she was there in the

courtroom, Mrs. Pope held up her arm, showing the scars where she had been cut during the attack. Appellant makes much of her account that she was surprised when she went to the door of her home to find "somebody that had a pistol sticking right in my face," since the attack in the instant case was made with a knife. It is apparent from the context of the testimony that Mrs. Pope had also been held up with a pistol in the recent past and that she had at first confused the two incidents. When she was reminded that the reference was to the knife attack, she gave a coherent account of the robbery and assault upon her person. If appellant's conviction was based solely on Mrs. Pope's account of events, it might be more a cause for concern. But, as we shall see, her testimony was used solely for proving up the corpus delicti. There was circumstantial evidence which corroborated complainant's testimony. And, the identity of appellant as Mrs. Pope's assailant was proven by other means. Under the circumstances we hold that appellant failed to carry his burden of demonstrating that the complainant's testimony was incompetent and that the trial court did not abuse his discretion in permitting her to testify. Appellant's third point of error is overruled.

■ In his first point of error, appellant contests the sufficiency of the evidence to support the verdict. In evaluating a challenge to the sufficiency of the evidence, the court will review the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim. App.1984). It is not for the court to sit as a "thirteenth juror" to second guess the determination made by the trier of fact. The appellate court functions as a final due process safeguard, ensuring only the rationality of the fact finder. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). A conviction based on circumstantial evidence cannot be sustained if the circumstances proved do not exclude every

reasonable hypothesis except that of the guilt of the accused, and proof amounting to only strong suspicion or mere probability is insufficient. *Guiton v. State*, 742 S.W.2d 5, 10 (Tex.Crim.App.1987). It is not necessary in circumstantial evidence cases that every fact point directly and independently to the defendant's guilt, however. It is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Livingston v. State*, 739 S.W.2d 311, 330 (Tex. Crim.App.1987).

In the instant case, a neighbor of the complainant, Fredieu, testified that he was in his carport washing his wife's car when he saw appellant staggering down the street in front of the complainant's house. He stated that some kids came by shouting a few moments later that a man had gone behind the complainant's house. About a minute later, Mrs. Pope came out of her house, screaming, her arms bleeding. The complainant was yelling that she had been cut and was afraid that Mr. Pope would be killed. Fredieu went into his house and called 911. When he came back out, his neighbors were chasing someone. After running a short distance on foot, Fredieu returned home for his car. Driving around Reveille and Greenstone streets, Fredieu saw appellant. Fredieu testified that when appellant saw him, he was "looking around like he was scared" and walked quickly across Reveille, "trying to get away." Being afraid that appellant was armed, Fredieu did not try to apprehend him, but, instead, flagged down the police. He then went home. About an hour and a half later, the police brought appellant back to the scene of the crime. Fredieu testified he was the same man he had seen earlier staggering in front of Mrs. Pope's house shortly before the attack. At trial, Fredieu identified appellant as the man he had seen.

Ann Garza, a 12 year old girl who lived in the same neighborhood as the complainant, testified that she was riding her brother's bicycle about the same time as the attack on Mrs. Pope. Ann saw appellant walking down the street. She then saw him open the gate behind Mrs. Pope's

house and go into the yard. While she at first testified she saw appellant cut the screen door, she later retracted that portion of her testimony. Ann Garza also testified she had seen appellant with a knife in his hand. Again, she retracted this portion of her testimony, saying she never saw appellant with a weapon. She insisted, however, that she did see appellant enter the complainant's back door. She also said she had seen Mrs. Pope's screen door earlier and it was not cut, but that later, after the ambulance came for Mrs. Pope, she noticed the screen on the door was cut.

Shortly after Ann Garza saw appellant go into Mrs. Pope's house, the complainant came out saying, "A man is in my house and he cut me open." Ann went inside her house and told her father, David Garza. After her father came out, Ann saw appellant jump over Mrs. Pope's gate and begin running. David Garza went running after him.

Ann Garza identified appellant in court as the man she had seen going into Mrs. Pope's house. She said that the man she saw used to live behind her. She used to see him when her volleyball would go over into his yard.

Ann Garza's father, David Garza, testified that when Ann came in and told him there was a man going behind Mrs. Pope's house, he didn't believe her at first. When she came back in, saying that Mrs. Pope was screaming, he came out and saw someone jump over the fence. David Garza went chasing after the man. Garza testified that he had known appellant, "Back in the '60's, way back." He had not seen appellant for about ten years. He said he did not immediately recognize the man he was chasing as appellant, but also said he did not really see his face at the time. Garza testified that appellant was wearing a different shirt when the police brought him back to the crime scene. Garza identified appellant in court, but conceded he could not be a hundred percent sure the man the police brought back was the same one he had chased earlier.

The complainant testified that she became aware someone had come in her back door. She said the man "tore the screen off" the back door. The man called her a "son of a bitch" and demanded "Give me your money." The man swung a switchblade knife under her face and cut her all up and down her arm after she refused to give him money. The complainant shoved the man down and ran outside, calling one of her neighbors. The complainant did not identify appellant in court as her assailant. She indicated she could not remember what he looked like and said it had been a long time since the incident.

Houston police officer R.L. Campbell interviewed witnesses at the scene. Campbell testified that the complainant was bleeding at the time and that she was shaking and crying. Officer Campbell said Mrs. Pope had told him her assailant had called her a "son of a bitch" and had told her to give him money. He had swung a knife at the complainant, cutting her on the right forearm.

Officer G.D. Wharton testified that appellant was picked up as a suspect to a car theft. He matched the description officers were given of Mrs. Pope's assailant and was taken back to the scene where he was identified by a neighbor, Yolanda Gonzalez.

Viewing the evidence in the light most favorable to the verdict, it is sufficient to show that appellant was observed by a neighbor in front of the complainant's house. A short time later, he was observed going behind her house and opening her gate. He was further seen crossing her back yard and entering her back door. The complainant herself testified that she became aware of someone present in the house and left her husband's bedside to investigate. She encountered appellant, who cursed her and demanded money. When she refused to give him money, the man began cutting the complainant on the arm with a knife. The complainant shoved the man down and ran outside, calling for help. Several neighbors responded to the call and gave chase. A short time later the man originally seen staggering in front of the complainant's house was seen by the neighbor, who was now pursuing him. Appellant saw the neighbor and crossed the

street, hurrying to get away. After the police were flagged down, they began to search for Mrs. Pope's assailant. Appellant was arrested as a suspect to a car theft and transported back to the complainant's residence where he was identified as the man originally seen in and around the complainant's residence.

There are, admittedly, some discrepancies in the different accounts related by the witnesses. But, it is for the trier of fact to resolve conflicts in testimony and to accept that portion of testimony deemed believable. *Edwards v. State,* 561 S.W.2d 834, 840 (Tex.Crim.App.1977) (opinion on motion for rehearing). The jury, or trial judge in a trial before the court, is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony, and may accept or reject all or any part of a witness' testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981); *Johnson v. State,* 571 S.W.2d 170, 173 (Tex. Crim.App.1978). Further, a witness may be believed even though part of his testimony may be impeached or contradicted. See *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Cr.App.1986).

Applying all the enunciated principles of law to the evidence before us, we hold that the combined and cumulative force of all the incriminating circumstances proved excludes every reasonable hypothesis except that of appellant's guilt. We find, further, that a rational trier of fact could have found all the essential elements of the offense charged. Appellant's first point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.