**Affirmed and Memorandum Opinion filed May 1, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00449-CR

### LESLIE R. COLLINS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1350783**

## M E M O R A N D U M   O P I N I O N

Appellant Leslie R. Collins appeals his conviction for misapplication of fiduciary property. In a single issue he argues the trial court erred in allowing a State's witness to testify after the witness remained in the courtroom in violation of the witness sequestration rule. We affirm.

## Background

Appellant entered a plea of guilty to the offense of misapplication of

fiduciary property without an agreed recommendation on punishment. The trial court ordered preparation of a presentence investigation report, and held a hearing on sentencing.

According to the offense summary in the PSI, appellant was a licensed insurance agent who misappropriated funds from individual customers and financial entities known as premium finance companies. In 2008, appellant was working with title companies ostensibly to provide insurance to new homeowners. In these instances the purchasers of new homes were required by the mortgage company to pay one year's home insurance premium at closing. Most of the homeowners paid with a check made out to the title company and delivered at closing. The title company then issued checks to appellant, and appellant was expected to forward the funds to the insurance provider and purchase the insurance. Instead of forwarding the insurance premium, appellant kept the money. Most of the affected homeowners did not learn they were uninsured until after their homes were damaged by Hurricane Ike.

While preparing for trial, the District Attorney's office discovered appellant committed a similar scheme involving premium finance companies. Premium finance companies typically provide financing to businesses and individuals who cannot afford to pay a lump sum annual insurance premium. The investigators learned that appellant created false clients, both business and personal, submitted their information to the finance companies, obtained financing, but kept the money paid by the finance companies.

The presentence investigators received victim impact letters from eight victims. Two of the victims, Bret Schulte and Roland Seymour, testified during the punishment hearing. Schulte and Seymour were victims of an investment scheme perpetrated by appellant, which was separate from the insurance scheme.

In his victim impact letter, Schulte wrote that he gave appellant and appellant's partner $500,000 in a single transaction to invest in real property. When the transaction failed to close appellant told Schulte he needed another $70,000. Schulte insisted that appellant keep the money in a trust account and only use it for the real estate investment. According to Schulte, appellant and his partner stole the money. They showed him a bank statement showing hundreds of thousands of dollars in the account, but Schulte later learned there was almost no money in the account. Schulte obtained real bank statements for the account, and learned that appellant was withdrawing large amounts of cash from the account to purchase personal items. Appellant eventually purchased the real estate, but did so through a holding company, essentially cutting Schulte out of the transaction. Schulte wrote that he never received any money for his investment. Schulte obtained a civil judgment against appellant for approximately $8,000,000.

In his victim impact letter, Seymour wrote that in August of 2008, appellant asked him for a $60,000 loan as an extension payment on a 264-acre tract of land known as the "La Marque Project." He said he would repay the $60,000 plus another $60,000 in two weeks. Within three weeks appellant paid Seymour $120,000. A week later appellant asked for another $125,000 to pay an insurance premium to a company named First Nations Insurance Group (FNIG). Seymour requested a written contract with appellant for return of the money. Seymour never received a contract or receipts he requested. Seymour became suspicious when he met several other investors who had paid money directly to FNIG on appellant's behalf. When Seymour met with one of the investors he learned that appellant repaid Seymour's $120,000 with funds he received from another investor in the La Marque Project.

After preparation of the PSI, the trial court held a punishment hearing. Prior

3

to any testimony, appellant invoked the witness sequestration rule (the "Rule"). *See* Tex. R. Evid. 614. The trial court explained to the witnesses that they should remain outside the courtroom and were not to discuss their testimony amongst themselves or with anybody else except for the attorneys representing either side.

Schulte testified during the punishment hearing that he first met appellant through a realtor. He invested $425,000 of his own money plus funds from his family members, which totaled over $1,000,000. Schulte gave the money to appellant with the understanding that appellant would purchase real estate in Galveston County, develop the land, and repay Schulte's investment. Appellant continued to ask for more money, but failed to close the real estate deal. Schulte testified that he has a judgment against appellant for over $8,000,000, but has not collected. On cross-examination, defense counsel asked Schulte about an agreement with a company named G.C. Wealth as it related to an apartment complex that was part of the real estate deal.

Seymour testified immediately after Schulte. Seymour began his testimony as follows:

> Q. All right. At some point in 2008, did you enter into some sort of financial or investment agreement with Leslie Ray Collins?
>
> A. Yeah. It was on August 4, 2008.
>
> Q. What sort of project did you believe you were investing money in?
>
> A. He told me he needed $60,000 as an extension payment for his seller, Mr. Bob Greg. He mentioned to me that it was supposed to be some sort of a mixed-use development, was what it was supposed to be — a town center, some apartments, some other stuff — and that he had — it was basically a major project that was going on with the town of La Marque.
>
> Q. That's La Marque in Galveston County?
>
> A. Yeah, it was called, quote, the "La Marque Project." And at the time the project — the name of the company was L.O.A. Holdings.

And I was just sitting here, and I heard them mention about G.C. Wealth, also. At the time when I met him —

Defense counsel immediately objected to Seymour's testimony as being in violation of the Rule. The State asked Seymour what he had heard of Schulte's testimony. Seymour replied, "I heard Mr. Schulte say that they changed the name of the company several different times." The trial court permitted Seymour's testimony about his experience with appellant.

Seymour testified that appellant approached him for a $60,000 extension payment to finance a project with FNIG. As he wrote in his victim impact letter, Seymour testified that appellant promised to pay him $120,000 in exchange for his $60,000 investment. Three weeks later, appellant paid Seymour $120,000. Approximately one month later, appellant asked to borrow $125,000 for a down payment on the deal with FNIG. Appellant promised to double Seymour's money, and promised if Seymour reinvested the $250,000, appellant would, within sixty days, double that money, for a total return of $750,000. Seymour never got his $125,000 back, and never discovered where the money went.

### Violation of "the Rule"

In his sole issue, appellant contends the trial court erred in allowing Seymour to testify after he heard a portion of Schulte's testimony.

Rule of Evidence 614, commonly known as "the Rule," provides for the exclusion of witnesses from the courtroom during trial. Tex. R. Evid. 614. The purpose of Rule 614 is to prevent the testimony of one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). Once Rule 614 is invoked, witnesses are instructed by the court that they cannot converse with one another or with any other person about the case, except by permission from the court. Tex. Code Crim. Proc. art. 36.06; *Russell*, 155

S.W.3d at 179. The trial court must exclude witnesses from the courtroom during the testimony of other witnesses. Tex. R. Evid. 614.

However, if a witness violates this rule, the trial court still has discretion to allow testimony from the witness. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). On appeal, the trial court's decision to admit testimony will not be disturbed absent an abuse of discretion. *Id*. A violation of the Rule is not, in itself, cause for reversible error. *Webb v. State*, 766 S.W.2d 236, 239–40 (Tex. Crim. App. 1989). The defendant must also show that he was harmed by the violation. *See Archer v. State*, 703 S.W.2d 664, 666 (Tex. Crim. App. 1986). Harm is established by showing that (1) the witness actually conferred with or heard testimony of other witnesses and (2) the witness's testimony contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard. *Id*.

In this case, it is clear Seymour violated the Rule because he heard a portion of Schulte's testimony. Seymour's testimony did not contradict or corroborate Schulte's testimony. According to their testimony and their victim impact letters, Seymour and Schulte experienced different fraudulent investment schemes with appellant. According to Schulte's testimony, he invested several hundred thousand dollars of his own money plus his family member's money and never saw a return on his investment. Appellant repeatedly asked for more money from Schulte and when he finally purchased the real estate, did so through a holding company, essentially ensuring that Schulte would not see a return on his investment. In contrast, the fraud described in Seymour's testimony resembled a "Ponzi" scheme in which appellant repaid Seymour's initial investment with funds received from another investor. Nothing in Seymour's testimony corroborated Schulte's testimony or made it more compelling. Seymour's testimony was almost identical

to the information he wrote about in the letter contained in the PSI. Seymour only heard Schulte's testimony about the names of the false companies used by appellant. The record does not reflect that the testimony Seymour heard affected his testimony at the punishment hearing. Accordingly, appellant was not harmed by Seymour overhearing a portion of Schulte's testimony. The trial court did not abuse its discretion in permitting Seymour to testify. We overrule appellant's sole issue.

The judgment of the trial court is affirmed.

/s/    Ken Wise
Justice

Panel consists of Justices Boyce, Busby, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).