COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| BENJAMIN JAMES PATTERSON, | § | |
| A/K/A BENJAMIN JAMES TALTON, | | No. 08-13-00111-CR |
| A/K/A BENJAMIN J. TALTON, | § | |
| | | Appeal from the |
| Appellant, | § | |
| | | 355th District Court |
| v. | § | |
| | | of Hood County, Texas |
| THE STATE OF TEXAS, | § | |
| | | (TC# CR12031) |
| Appellee. | § | |

## **O P I N I O N**

Appellant Benjamin James Patterson was indicted for theft of property valued at $20,000 or more but less than $100,000. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(5) (West 2011). After Appellant pleaded not guilty to the charged offense, the jury found him guilty and assessed punishment at 99 years' imprisonment. On appeal, Appellant raises three issues for our review. We affirm.

### **BACKGROUND**

Color surveillance video from the First National Bank of Granbury shows three masked men use an El Camino to smash through the windows of the bank, steal an ATM machine out of the bank, and place it into the back of the El Camino around two o'clock in the morning on

December 2, 2010. A Hood County Sheriff officer, who was driving in the area, heard the alarm call at the bank and observed a dark-colored El Camino exiting the bank parking lot. After a high-speed chase, the ATM machine fell out of the vehicle on James Road, the El Camino crashed into a fence on Royal Lane, and the three suspects fled on foot. Two of the men were captured, and although officers set up a perimeter to search for the third suspect, the third suspect was not located. However, officers discovered a black glove in between two houses. The glove was photographed and collected and put into evidence. After officers watched the bank surveillance video, it was noted that the third suspect was wearing black gloves.

At approximately 8 o'clock in the morning on December 2, 2010, Hood County Sheriff Officer Matthew Bales responded to a report of a stolen GMC on 5410 Frank Lane in Granbury which was near where the El Camino had wrecked. That same day, the stolen GMC was found abandoned in the middle of Lake Como in Fort Worth, Texas. Also in the morning hours of December 2, 2010, Albert Stewart called police to report that his 1979 El Camino had been stolen from his home in Fort Worth.

On December 5, 2010, Hood County Sheriff's Officer Jeremy Roth responded to a report of a burglary of a non-operational pickup on 5412 Frank Lane in Granbury which was near where the El Camino had wrecked and was next door to 5410 Frank Lane, where the GMC was stolen. Officer Roth observed the pickup had been broken into and he noted damage to the steering column and observed a dry, red substance on the steering column. Based on his training and experience, Officer Roth believed the substance was blood. Samples of the substance confirmed to be blood were collected for analysis and booked into evidence. Upon

2

further investigation by police, it was determined that Appellant's DNA matched the blood samples found on the steering column of the burglarized pickup and Appellant's DNA could not be excluded as a contributor to the major male DNA mixture profile from the DNA samples retrieved from the black glove found during the search for the third suspect. At trial, the State's theory of the case was that Appellant was the third missing suspect who had dropped his glove during his escape after the El Camino crashed. After Appellant attempted to steal the non-operational vehicle at 5412 Frank Lane and somehow cut himself leaving blood on the steering column, he went next door to 5410 Frank Lane and stole the GMC. Appellant then drove to Fort Worth where he resided, and tried to hide the stolen GMC by dumping it in Lake Como which was in close proximity to his home.

## DISCUSSION

In three issues on appeal, Appellant complains the trial court erred: (1) in admitting evidence of extraneous offenses; (2) by failing to give the jury an instruction limiting its consideration of the extraneous offenses; and (3) by allowing witness testimony in violation of the witness rule.

## ADMISSION OF EXTRANEOUS OFFENSE EVIDENCE

In Issue One, Appellant complains the trial court erred by overruling his objections and admitting extraneous offense evidence. He argues that the evidence was inadmissible under Texas Rules of Evidence 403 and 404(b).

### Standard of Review

We review the admission of extraneous offense evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009); *Prible v. State*, 175 S.W.3d 724,

3

731 (Tex.Crim.App. 2005). A trial court does not abuse its discretion if the decision to admit or exclude the evidence is within the "zone of reasonable disagreement." *Orona v. State*, 341 S.W.3d 452, 464 (Tex.App. – Fort Worth 2011, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990) (op. on reh'g)); *Oprean v. State*, 201 S.W.3d 724, 726 (Tex.Crim.App. 2006). A trial court's determination on the admissibility of extraneous-offense evidence typically falls within the zone of reasonable disagreement if the evidence shows: (1) that an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz*, 279 S.W.3d at 344. The trial court's ruling must be upheld if it is reasonably supported by the record and correct under any applicable theory of the law. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App. 2002).

*Applicable Law*

Relevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX.R.EVID. 401. Under Texas Rules of Evidence 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove that the accused committed the charged offense in conformity with his bad character. TEX.R.EVID. 404(b). However, it may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id*.; *Devoe v. State*, 354 S.W.3d 457, 469 (Tex.Crim.App. 2011); *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App. 1991)(op. on reh'g). These exceptions are neither mutually exclusive nor collectively exhaustive. *De La Paz*, 279 S.W.3d

4

at 343.   For example, "under the reasoning that events do not occur in a vacuum[,]" evidence of extraneous offenses may be admissible "[t]o show the context in which the criminal act occurred[.]"   *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App. 1972); *see also Devoe*, 354 S.W.3d at 469 (discussing admissibility of same-transaction contextual evidence).   The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Devoe*, 354 S.W.3d at 469.   In order for an extraneous offense to be admissible, it must be relevant apart from supporting an inference of character conformity.   *See Montgomery*, 810 S.W.2d at 387; TEX.R.EVID. 401.   However, under Rule 403, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusions of the issues, misleading the jury, or by considerations of undue delay, or needless presentation or cumulative evidence.   TEX.R.EVID. 403.

*Analysis*

The record establishes Appellant filed a pretrial motion in limine with regard to any extraneous offenses offered by the State.   The State explained that it considered three extraneous offenses res gestae to the charged offense and argued that although the extraneous offenses constituted different criminal offenses, they were all part and parcel of the charged offense and the flight therefrom.   The three extraneous offenses presented by the State included: (1) the theft of the El Camino; (2) the burglary of the non-operational vehicle in which Appellant's DNA was discovered; and (3) the theft of the GMC that was abandoned in Lake Como.   Appellant raised a Rule 404(b) objection to all three offenses and argued the elements of the extraneous offenses were not consistent with the elements of the charged offense.   In response, the State argued the extraneous offenses were part and parcel of the same transaction

5

and that they proved identity, modus operandi, and the preparation and plan for the charged offense and the flight therefrom. The State urged the extraneous offenses proved Appellant broke the steering columns of the vehicles in the same way and that he used the stolen GMC in his flight from the bank theft.

After conducting a balancing test, the Court determined the extraneous offenses concerning the stolen El Camino and the non-operational vehicle in which Appellant's DNA was discovered were admissible. Specifically, the trial court found those offenses were relevant to a fact of consequence before the jury and were not conduct in conformity with character evidence, and that the probative value outweighed any prejudicial effect under Rule 403. The trial court sustained Appellant's objection to the extraneous offense concerning the stolen GMC, but reserved its right to revisit the issue during the course of trial.

At trial, the State argued the extraneous offense evidence was res gestae of the charged offense, and should be admitted as a Rule 404(b) exception and as contextual evidence to show how the crime was committed and how Appellant fled from the crime to his home in Fort Worth. Appellant reasserted his objections to the admission of the extraneous offenses. The State further urged that identity was at issue and argued that the only thing Appellant contested was whether he was the third suspect that committed the crime. After considering the totality of the evidence and conducting another balancing test, the trial court found all the extraneous offense evidence to be admissible. Appellant's subsequent Rule 404(b) and Rule 403 objections to the extraneous offense evidence were overruled by the trial court.

On appeal, Appellant argues the extraneous offense evidence was admitted in error. Appellant maintains the State proved only "that a third guy got away." He further complains

that but for the improperly admitted extraneous offense evidence, the case would have been dismissed for insufficient evidence.

In response, the State maintains admission of the extraneous offense evidence was not error "because they were part of the same criminal event and their similarity established the identity of the defendant." The State argues the attempted theft of the non-operational vehicle in which Appellant's DNA was discovered and that the actual theft of the GMC found in Lake Como were part of the Appellant's flight from the bank theft. As such, the State maintains that those two extraneous offenses were admissible to prove guilt and because they were part of the same transaction. As to the theft of the El Camino, which was reported December 2, the morning of the bank theft, the State asserts that the theft of the El Camino was germane to the planning, preparation, and execution of the actual bank theft. The State further points out that the steering columns of all three vehicles were broken in an identical fashion. According to the State, the extraneous offenses "were pieces of the same crime that only have meaning when examined together." The State contends the extraneous offenses "give context to the bank theft and show [Appellant's] handiwork, or identity." The State also argues the extraneous offense evidence was highly probative because it gave context and helped rebut Appellant's defense that he was not the perpetrator.

We agree with the State that the extraneous offense evidence was res gestae of the offense or same transaction contextual evidence. The record shows the El Camino was stolen from a residence in Fort Worth close to the homes of Appellant and the other two suspects involved in the bank theft. The owner of the El Camino reported it stolen the morning of the bank theft. The burglary of the non-operational vehicle in which Appellant's DNA was

discovered and the theft of the GMC that was later found in Lake Como occurred in the same area the El Camino crashed and the three suspects fled on December 2, 2010. The report of the burglary of the non-operational pickup, in which Appellant's DNA was found, was made on December 5, 2010. The GMC was stolen on the same date as the bank theft from a home located next door to the burglarized vehicle which contained Appellant's DNA. It was also in that same neighborhood that the black glove containing Appellant's DNA was found. The record establishes that the third suspect who escaped after the El Camino crashed was wearing black gloves. On the same day it was stolen, the GMC was found abandoned in Lake Como which was in close proximity to Appellant's home and the homes of the other two suspects. All three vehicles involved in the extraneous offenses presented by the State had similar damage of the steering columns. Moreover, officers obtained keys from Anthony Hannon, one of the apprehended suspects, to a vehicle found where the ATM fell out of the El Camino. Inside of that vehicle, officers found Hannon's wallet and cell phone. A search of the cell phone revealed that Hannon and Appellant made calls to one another on December 2, 2010, around the time of the bank theft and had made a number of calls to each other prior to the date of the bank theft. The subpoenaed cell phone records showed that after 1:41 a.m. on December 2, 2010, there were no other calls made between the phone numbers of Appellant and Hannon.

On the record before us, we conclude the trial court could have reasonably concluded the extraneous offense evidence concerning the El Camino, the burglary of the vehicle containing Appellant's DNA, and the stolen GMC abandoned in Lake Como was res gestae of the offense or same transaction contextual evidence. *See Devoe*, 354 S.W.3d at 469-71 (holding extraneous offense evidence of other uncharged crimes and incidents that occurred throughout the entire

8

crime spree that resulted in the murder of six people, in three locations, over a period of three days, was admissible as same-transaction contextual evidence because the State needed the evidence to explain appellant stole the gun to go after women and then stole vehicles to effectuate his interstate flight to the home of his mother). At a minimum, the trial court's admission of the extraneous offense evidence is within the zone of reasonable disagreement as to whether the evidence was needed to prove identity or understand the res gestae of the charged offense. Accordingly, we conclude the trial court did not abuse its discretion in admitting the complained-of extraneous offense evidence.

The extraneous offense evidence was also admissible to rebut Appellant's defensive theory that he was not the third suspect who escaped after the El Camino crashed. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex.Crim.App. 2009); *Moses v. State*, 105 S.W.3d 622, 626 (Tex.Crim.App. 2003); *see also Powell v. State*, 63 S.W.3d 435, 439-40 (Tex.Crim.App. 2001) (the admission of extraneous offense evidence to rebut a defensive theory raised in the accused's opening statement is within the trial court's discretion). At trial, during Appellant's opening statement, Appellant advanced a theory that Appellant was not the third suspect who escaped after the bank robbery:

> Defense counsel: Folks, what you just heard was a giant fishing expedition. There's nothing specific about it, and we anticipate in this case there's not going to be anything specific about what they can prove. All right. Fishing for the next two days, fishing in troubled waters. The realty of it is that they got the wrong guy.
>
> …
>
> You're going to hear a lot of talk about DNA, a lot of talk about cuts and bruises, a lot of talk about what could have happened, okay? But none of those things speak directly to the elements of what happened over at First National Bank. And you won't hear any evidence that places [Appellant] at the scene of that

9

crime on the night that it happened.    It's a theory.    That's what the evidence is going to show.

…

What we expect to see is that you will hear testimony of some very smart people, some very honest, hard-working people who live and work right here in Hood County, okay?    They don't know a whole lot about the third guy in this offense. They won't be able to specifically put their finger on [Appellant].    Not saying that they're bad people, but we want you to examine their testimony very closely.

At the end of this testimony, we're going to return to you, we're going to ask you to find [Appellant] not guilty.

Similarly, during closing argument, Appellant's counsel summed up the State's evidence as showing that "[t]he third guy got away."    The jury was told that Appellant was not the third guy and that nothing was presented to prove that he was the third guy.    Appellant's counsel stated that "what the State has attempted to do [was] show [the jury] in general terms that [Appellant is] a bad person, because they cannot specifically prove that the third guy was him."

Based on the record before us, we find that the trial court could have reasonably concluded the extraneous offense evidence was not offered solely for character conformity purposes, but was offered to show a material, nonpropensity issue.    *See Devoe*, 354 S.W.3d at 469 (admission of evidence under Rule 404(b) is generally within the zone of reasonable disagreement and not an abuse of discretion if there is evidence supporting that an extraneous offense is relevant to a material, nonpropensity issue).

Next, we address whether the probative value of the extraneous offense evidence was substantially outweighed by the danger of unfair prejudice.    *See* TEX.R.EVID. 403; *Montgomery*, 810 S.W.2d at 389.    Rule 403 favors the admissibility of relevant evidence, and presumes that relevant evidence will be more probative than prejudicial.    *Shuffield v. State*, 189 S.W.3d 782,

10

787 (Tex.Crim.App. 2006). Appellate courts should afford deference to a trial court's Rule 403 balancing evaluation and should reverse a trial court "rarely and only after a clear abuse of discretion." *Montgomery*, 810 S.W.2d at 392. In conducting a Rule 403 analysis, the following four factors are considered by the trial court: (1) how compellingly the extraneous evidence serves to make more or less probable a fact of consequence; (2) the potential of the evidence to impress the jury in an irrational and indelible way; (3) the time needed to develop evidence of extraneous misconduct; and (4) the degree of the proponent's need for such evidence. *Montgomery*, 810 S.W.2d at 389-90.

Here, the extraneous offense evidence is highly probative as it was relevant to show the contextual background of the offense, the identity of the third suspect in the bank theft, and to rebut a defensive theory. The first factor favors admission. In regard to the second factor, there is nothing in the record or about the nature of the extraneous offenses which indicate the extraneous offense evidence had the potential to impress the jury in an irrational and indelible way. The second factor favors admission. As to the third factor, the time needed to develop the extraneous offense evidence, the State presented nineteen witnesses during its case-in-chief. Of those witnesses, seven provided testimony about the extraneous offenses. We note the reporter's record containing the transcription of the guilt-innocence phase of trial spans over two-hundred pages while the testimony concerning the extraneous offenses spans over less than sixty pages of the record. Additionally, the time the State used to refer to the extraneous offenses during opening and closing statements was minimal. The third factor favors admission. Lastly, because Appellant's identity as the third suspect was a contested issue at trial, the extraneous offense evidence was needed to show the contextual background of the offense, identity, and to

11

rebut a defensive theory. *See Prince v. State*, 192 S.W.3d 49, 56 (Tex.App. – Houston [14th Dist.] 2006, pet. ref'd). Thus, trial court could have concluded that the State's need for the extraneous offense evidence was great.

Appellant also complains the trial court erred in admitting State's Exhibit 208, a copy of the subpoenaed cell phone records showing that phone calls were exchanged between Appellant and Hannon. The State maintains the cell phone records were relevant and admissible because they "demonstrated a connection between one of the captured suspects and [Appellant]; the record was material to proving he was the third suspect, a fact of consequence in the case." We agree with the State. Here, Hannon's cell phone was found in a vehicle were the ATM fell out of the El Camino as it fled the bank. The subpoenaed phone records showed a number of calls between Hannon's cell phone number and Appellant's cell phone number on December 2, 2010, including one during the time frame of the bank theft, as well as calls before the date of the bank theft. However, after the theft and Hannon's capture, there were no more calls made between the two cell phone numbers. In this case, where identity was at issue and Appellant's defensive theory was that he was not the third suspect who escaped from police, the evidence was relevant and highly probative because it made facts of consequence more likely. The trial court did not err by admitting this evidence.

We conclude the trial court did not abuse its discretion in determining that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX.R.EVID. 403. Because the trial court's ruling was "within the zone of reasonable disagreement," we conclude the trial court did not abuse its discretion by admitting the complained-of extraneous offense evidence. *See De La Paz*, 279 S.W.3d at 344; *Orona*, 341

12

S.W.3d at 464; *Oprean*, 201 S.W.3d at 726; TEX.R.EVID. 403, 404(b).    Issue One is overruled.

## Limiting Instruction

In Issue Two, Appellant argues the trial court should have given a limiting instruction instructing the jury to consider the extraneous offense evidence only on the issue of identity. Alternatively, he complains his trial counsel was ineffective for not requesting a limiting instruction as to identity after his Rule 404(b) objection was overruled and for not requesting a limiting instruction as to identity in the jury charge.    However, as correctly noted by the State no limiting instruction is required for same transaction contextual evidence.    *See Devoe*, 354 S.W.3d at 471; *Wesbrook v. State*, 29 S.W.3d 103, 114-15 (Tex.Crim.App. 2000); *Camacho v. State*, 864 S.W.2d 524, 535 (Tex.Crim.App. 1993).    As set forth in Issue One, the extraneous offense evidence constituted same transaction contextual evidence.    Accordingly, the trial court did not err in failing to provide the jury with a limiting instruction as to evidence.    *See Devoe*, 354 S.W.3d at 471.

Even assuming the extraneous offense evidence was not same transaction contextual evidence, because we also believe the complained-of evidence was admissible to show a material, nonpropensity issue, there would be no error because the record establishes and Appellant concedes that he did not request a limiting instruction.    The party opposing evidence or seeking a limitation bears the burden to object and request a limiting instruction at the introduction of the evidence.    *Hammock v. State*, 46 S.W.3d 889, 894 (Tex.Crim.App. 2001); *see also Walker v. State*, 300 S.W.3d 836, 849 (Tex.App. – Fort Worth 2009, pet. ref'd).    When a defendant fails to request a limiting instruction when the evidence is introduced, he fails to preserve error and the trial court is not obligated to provide a limiting instruction.    *Hammock*,

13

46 S.W.3d at 895. A request for a limiting instruction must "inform the trial court as to what limitation should be placed upon the evidence[.]" *Puente v. State*, 888 S.W.2d 521, 528 (Tex.App. – San Antonio 1994, no pet.) (citing *Burks v. State*, 876 S.W.2d 877 (Tex.Crim.App. 1994) (stating that to avoid forfeiture of appellate complaint a party must let trial court know what he wants, why he is entitled to it, and to do so in a clear enough manner to allow trial court to do something about it)).

Without citing to any authority, Appellant maintains the trial court was obligated to provide a limiting instruction as to identity at the time the extraneous offense evidence was admitted and when it charged the jury because the State requested and agreed to such an instruction. Specifically, Appellant points to the following colloquy which occurred during a bench conference on the extraneous offense evidence:

> MR. GREEN: Judge, we would object. Again, I'd like to renew my prior objection that these extraneous acts and the facts that the State has just stated are completely different from the facts of the case. To be more specific, what the State is trying to prove is that the car theft, the alleged car theft is conduct that conforms with - - that it is character evidence to show that he acted in conformity with bad character.... Identity here is not a critical component of proving that [Appellant] was a part of the burglary that happened.
>
> We would specifically like to have this evidence excluded.
>
> . . .
>
> MR. BERRY: Your Honor, we would agree with the limiting instruction both at the time that the evidence is submitted and in the charge of the Court, limiting this matter to the - - to the matter of identity. But identity is the issue in this case. Obviously, this crime was committed. The only - - the only thing that the [Appellant is] contesting is whether or not he was the one that was the third suspect that committed this crime.

We also note that in its briefing, the State asserts Appellant requested a limiting instruction based on the following colloquy between Appellant and the trial court during a pretrial hearing on Appellant's motion in limine regarding the extraneous offense testimony:

14

MR. GREEN: Judge, we would like to take issue with all of those matters because none of those are elements of the charged offense before the Court. What we would like to have, we would like to bring those matters to the bench before testimony is offered to the jury. If any of those items are allowed to be presented to the jury, we would like also for the - - to be a limiting instruction and also like for there to be a specific instruction with regard to why those extraneous offenses are being presented to the jury.

THE COURT: All right. You may bring those matters before the Court outside the presence of the jury. Do you want to do that at this time or - - or you don't want to wait until we reach that point in the testimony where you want to offer any information about those extraneous matters and have that matter discussed and taken up outside the jury's presence then? How do you want to do it?

We reject both Appellant's and the State's characterizations of the above statements to the trial court as specific requests for a limiting instruction.

Because Appellant bore the burden of requesting a limiting instruction and did not request an instruction at any point during the pretrial hearing, trial on the merits, or charge conference, he was not entitled to a limiting instruction and has failed to present anything for review on appeal. *See Delgado v. State*, 235 S.W.3d 244, 253 (Tex.Crim.App. 2007); (explaining that an objection to admission of evidence and a request for a limiting instruction must be made when evidence is introduced for a party to be entitled to a limiting instruction); *Walker*, 300 S.W.3d at 849 (if appellant fails to request limiting instruction when evidence is admitted, appellant does not preserve); *Slaughter v. State*, No. 14-05-00863-CR, 2006 WL 2805564, at *4 (Tex.App. – Houston [14th Dist.] Oct. 3, 2006, no pet.) (mem. op., not designated for publication) (holding when defendant fails to request limiting instruction when evidence is introduced, then he cannot complain about its admission on appeal).

However, the charge of the court did include a limiting instruction as to the extraneous offense evidence that provided:

> [Y]ou are instructed if there is any testimony regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any, were committed, and even then you may only consider the same in determining the intent or knowledge of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case and for no other purpose.

The record reflects that during the charge conference, Appellant did not object to the trial court's proposed jury charge which included the above-referenced limiting instruction. Appellant also failed to make any special requests or instructions at that time. On appeal, Appellant acknowledges the trial court provided the jury with a limiting instruction that was not on point as it instructed the jury "as to 'intent and knowledge' rather than 'identity', the main issue." However, he does not complain that the instruction as given to the jury was improper or that he was harmed in any way by the instruction that was provided to the jury.

**Ineffective Assistance of Counsel**

In the alternative, Appellant contends he received ineffective assistance of counsel. However, in support of his argument, Appellant merely states that his "trial counsel had no reasonable trial strategy to fail to request the limiting instruction, and therefore the trial counsel's representation fell below an objective standard of reasonableness requiring a reversal." The rules of appellate procedure require an appellant's brief to contain a clear and concise argument containing appropriate citations to authority and to the record. *See* TEX.R.APP.P. 38.1(i). To prevail on a claim of ineffective assistance of counsel, Appellant must satisfy a two-prong test by a preponderance of evidence showing that: (1) his attorney's performance was deficient; and that (2) his attorney's deficient performance deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Chandler*, 182 S.W.3d 350,

353 (Tex.Crim.App. 2005). Under the first prong, the attorney's performance must be shown to have fallen below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Namely, Appellant must prove that his attorney's conduct fell below the professional standard. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). Under the second prong, Appellant must establish that there is a reasonable probability that but for his attorney's deficient performance, the outcome of his case would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Thompson*, 9 S.W.3d at 812.

Appellant fails to put forth any argument and analysis showing that the record and the law support his contention. Accordingly, we conclude Appellant has inadequately briefed this argument, and has waived appellate review of his complaint. *See McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex.Crim.App. 2001) (an inadequately briefed issue may be waived on appeal); *see also Bessey v. State*, 199 S.W.3d 546, 555 (Tex.App. – Texarkana 2006), *aff'd*, 239 S.W.3d 809 (Tex.Crim.App. 2007) (ineffective assistance claim overruled due to inadequate briefing where appellant's brief made no effort to show how record demonstrated prejudice under *Strickland*). Issue Two is overruled.

**Violation of the Rule**

In Issue Three, Appellant contends the trial court abused its discretion when it allowed Cheryl Wright, a witness for the State, to testify after she had heard testimony of two other witnesses in court despite invocation of the witness rule, and that Appellant was harmed as a result of the violation. Texas Rule of Evidence 614 provides for the exclusion of witnesses from the courtroom during trial so they cannot hear the testimony of other witnesses. *See* TEX.R.EVID. 614. The purpose of the Rule is to prevent the testimony of one witness from

influencing the testimony of another witness. *Russell v. State*, 155 S.W.3d 176, 179 (Tex.Crim.App. 2005). If the Rule is violated by a witness, the witness's testimony may be admitted or excluded at the trial court's discretion. *Bell v. State*, 938 S.W.2d 35, 50 (Tex.Crim.App. 1996).

We review the trial court's decision whether to exclude a witness who has violated the Rule for an abuse of discretion. *Webb v. State*, 766 S.W.2d 236, 240 (Tex.Crim.App. 1989); *State v. Saylor*, 319 S.W.3d 704, 710 (Tex.App. – Dallas 2009, pet. ref'd). A violation of the Rule is not in itself reversible error, but only constitutes error when the objected-to testimony is admitted and the complaining party is harmed. *See Webb*, 766 S.W.2d at 239-40; *Archer v. State*, 703 S.W.2d 664, 666 (Tex.Crim.App. 1986). Harm to the complaining party is proven by showing that: (1) the witness actually conferred with or heard testimony of other witnesses; and (2) the witness's testimony contradicted the testimony of a witness from the opposing side or corroborated the testimony of a witness he had conferred with or heard. *Archer*, 703 S.W.2d at 666.

The record reflects that Wright mistakenly overheard twenty minutes of testimony from other witnesses after the rule was invoked. Outside of the presence of the jury, Wright told the court that she did not remember who was testifying when she was in the courtroom and that she could not say what was talked about. Wright's testimony was admitted over Appellant's objection that her testimony was tainted as a result of her presence in the courtroom during the officers' testimony.

Although the record clearly reflects Wright violated the rule because she heard the testimony of Officers Hicks and Grizzard, Wright's testimony did not contradict or corroborate

18

the testimony of either officer. The extent of Wright's testimony was that she lived on Frank Lane and owned a 1992 GMC pickup that was stolen on December 2, 2010. According to Wright, there had been no damage to the steering column of her vehicle before it was stolen. The record reflects that the testimony of Officers Hicks and Grizzard had nothing to do with Wright's residence, vehicle, or the damage to the vehicle's steering column. While Appellant seems to argue that Wright overheard a discussion of the State's theory of the case that occurred with the trial court just before the lunch recess, we agree with the State that a careful review of the record shows that any discussion about the State's theory of the case was taken up after the trial court broke for lunch and outside of the presence of Wright. Accordingly, we conclude Appellant was not harmed or prejudiced by Wright overhearing the testimony of Officers Hicks and Grizzard. The trial court did not abuse its discretion in admitting Wright's testimony. *Webb*, 766 S.W.2d at 240. Issue Three is overruled.

## CONCLUSION

Having overruled all three of Appellant's issues, the trial court's judgment is affirmed.


YVONNE T. RODRIGUEZ, Justice

January 14, 2015

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating

(Do Not Publish)

19