Lonnie Ray EDWARDS, Appellant,

v.

The STATE of Texas, Appellee.

No. 53692.

Court of Criminal Appeals of Texas.

Oct. 19, 1977.

Appellant's Motion for Rehearing Denied Dec. 7, 1977.

Ebb B. Mobley, III, Longview, for appellant.

Odis R. Hill, Dist. Atty. and Dexter A. Jones, Asst. Dist. Atty., Longview, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

PHILLIPS, Judge.

The offense is burglary of a building; the punishment, five years.

Appellant challenges the sufficiency of the evidence to sustain the conviction.

James Williams, general manager of Continental Homes, testified that on January 6, 1976, he went to 804 Hollybrook in Longview and found a front bedroom window had been broken out of the house and a dishwasher and range were missing. He also noted the wall between the garage and

kitchen had been pushed in and there was "quite a bit of transmission fluid on the floor" of the garage. The following day witness Williams went to 800 Hollybrook and found a bathroom window had been broken out, a dishwasher and range had been taken, the wall paneling in the garage had dents in it, and there was transmission fluid on the garage floor.

Don Morgan, construction manager for Continental Homes at the time of the alleged offense, testified the two houses in question were newly constructed houses that were 99 percent complete except for a few "punch up" items. Witness Morgan stated he had care, control and management of the two houses and he had not given anyone permission to enter the houses and remove appliances or fixtures. He stated he had personally cleaned up the two garages and there were no oil smudges or damage to the walls at that time and the garage doors were always kept shut. Morgan further testified that on January 7 he went to the police department in Marshall and identified a dishwasher and range as the ones removed from 804 Hollybrook. Approximately two weeks later Morgan returned to Marshall where he recovered a dishwasher and range with serial numbers matching the appliances installed in 800 Hollybrook.

Larry Bennett, sales manager for Continental Homes, testified the two houses in question had been for sale since the first of December, 1975, and the houses were unlocked between 8:00 a.m. and 5:00 p.m. during the week and were open on week-ends. Witness Bennett stated there was not an attendant with the homes while they were unlocked.

Witness Claxton testified that on January 6 he and his wife were looking at houses and they entered the house at 800 Hollybrook. The front door was locked, but the back sliding door was open so they let themselves in. Witness Claxton stated he found a billfold on the kitchen floor four to seven feet from where an electric range and dishwasher would have been installed. The billfold contained a temporary driver's license in the name of Lonnie Ray Edwards at an address in Marshall. The billfold was turned over to the Longview Police Department and an investigation of 800 Hollybrook on January 7 showed unlawful entry from the outside through a bathroom window, a dishwasher and range had been removed, the back sliding door was open, and one of the garage doors was unlocked.

Officer Shadowens of the Marshall Police Department stated during the early morning hours of January 6 he was having breakfast and observed a white Cadillac pull up to the office of a motel across the street. One of the two occupants of the car went into the office, tried to awaken the night clerk, left the office and went around to a side door and then reentered the car and drove off. In the turtle hull Officer Shadowens observed some household appliances. He stated the car was of the same type and color as the car depicted in State's Exhibit 3, a photograph of a Cadillac impounded later that day by the Marshall Police Department.

Wilburn Petty testified that when he returned to his house on January 6 appellant and Gary Jones were there and a white Cadillac belonging to Jones was parked in the driveway. Witness Petty said Jones tried to sell him a new dishwasher and range that were in the trunk of the Cadillac for $125.00. He said appellant was not present at that time.

James Murff, a patrolman with the Marshall Police Department, stated that on January 6 he drove by the home of Wilburn Petty and saw an old model white Cadillac backed up on the south side of the house with appliances in the opened trunk. After relaying this information to Detective Metcalf and running a license check on the vehicle, Officer Murff returned to Petty's house.

Detective Metcalf of the Marshall Police Department testified as a result of a contact with Officer Murff he proceeded to Wilburn Petty's residence where he discovered a light colored Cadillac with a stove and dishwasher in the back, backed into the southwest side of the house. While making

an investigation, Detective Metcalf saw Gary Jones in the house and placed him under arrest on an outstanding warrant. Metcalf stated he did not see appellant at that time, but after Metcalf left the house appellant showed up in the front yard. Detective Metcalf testified he talked with Wilburn Petty and determined appellant and Jones had arrived in the Cadillac.[1] The Cadillac was then towed away and impounded and the appliances were removed. Metcalf stated it took more than one person to move each appliance. He further stated that he saw some type of oil leakage from the Cadillac. The serial numbers from the appliances were teletyped to local regions and an immediate response was received from Longview.

Lt. Puckett of the Longview Police Department stated he contacted the Marshall Police Department and looked at a car that had been impounded in Marshall. The car was a 1963 Cadillac that was leaking transmission fluid. He said the bumper on the car was 15 to 18 inches high and the marks on the walls of the two houses in Longview were 15 to 18 inches from the floor. The serial numbers from the appliances removed from the car matched the serial numbers on the billing invoices of the appliances installed at 804 Hollybrook.

Appellant testified at the punishment phase of the trial and denied having participated in the alleged burglary, although he stated he knew his cousin, Gary Jones, was selling stolen merchandise. Appellant admitted the billfold found in the house in Longview was his, but he said that he did not know how it got there and that the last time he saw his billfold was December 23, when he put it on Petty's TV as was his habit when drinking with Petty.

The circumstances surrounding the instant burglary can be summarized as follows: two new houses on the same block were entered on or before January 6, 1976, and a dishwasher and range were removed from each house; it would have been difficult for one person acting alone to have removed the appliances; entry to each house was gained by breaking a window; oil and transmission fluid were found on the floor of each garage; the walls in the garages had been damaged and there were marks 15 to 18 inches from the floor; appellant's wallet was found on the kitchen floor of 800 Hollybrook on January 6; appellant was found at the home of Wilburn Petty on January 6, and the appliances that had been removed from 804 Hollybrook were found in the trunk of the car in which appellant had arrived at Petty's house; this car was leaking oil and transmission fluid and the bumper was 15 to 18 inches high.

In light of the unity of time and method of commission of the two burglaries, we find the recovery of appellant's wallet on January 6 from the kitchen floor of 800 Hollybrook, together with the discovery on January 6 of the dishwasher and range removed from 804 Hollybrook in the trunk of the car which, from the evidence presented was shown to have been involved in the burglaries and in which appellant had

1. Witness Metcalf testified as follows:
 "Q All right. And did you determine who had come up in the Cadillac? Did you talk to anybody out there at the scene?
 A Yes, sir. Mr. Petty.
 Q And who did you determine had come up in the Cadillac?
 A Lonnie Edwards and Gary Jones.
 Q And did you ask Gary Jones if that was his vehicle?
 A Yes, sir.
 * * * * * *
 Q Mr. Metcalf, after you had arrested Gary Jones and after Mr. Edwards came up to the residence, did you have an opportunity to talk with both of them in each other's presence?
 A Yes, sir.

 Q And were they both to where they could hear what you were saying to one or the other?
 A Yes, sir."
 The dissenting opinion states appellant's presence in the Cadillac was established by hearsay evidence. The record is not clear as to how Metcalf determined appellant had arrived at Petty's house in the Cadillac. According to Petty's trial testimony, Petty was not home when the car arrived and thus he could not have known whether appellant had been in the car. Although Metcalf could not have had personal knowledge of such fact, his testimony may not have been hearsay. The burden of showing this testimony was hearsay was on the appellant. *Beal v. State*, Tex.Cr.App., 520 S.W.2d 907.

recently been riding, to be sufficient to warrant the conclusion that appellant was present at the time of the alleged offense and participated in the burglary.[2] Viewing the evidence in the light most favorable to the verdict, we find the evidence sufficient to sustain the jury's finding of guilt. See and compare *Dunham v. State*, Tex.Cr.App., 265 S.W.2d 819; *Clark v. State*, 493 S.W.2d 512; *Clark v. State*, Tex.Cr.App., 500 S.W.2d 507; *Nelson v. State*, Tex.Cr.App., 505 S.W.2d 271.

Appellant's remaining contention is that the indictment is fundamentally defective because it does not state with sufficient particularity where in Gregg County the offense occurred.

The indictment alleges in part that:

". . . on or about the 5th day of January, A.D. 1976, and anterior to the presentment of this Indictment, in the County and State aforesaid LONNIE RAY EDWARDS, hereinafter styled actor, did then and there, with intent to commit theft, enter a habitation, without the effective consent of Don Morgan, the owner thereof, against the peace and dignity of the State."

■ No motion to quash the indictment was filed; however, appellant contends that the locality of the offense is a matter of substance and the State should have pleaded which building was the subject of the instant burglary.[3]

In *Hodge v. State*, Tex.Cr.App., 527 S.W.2d 289, the defendant contended an indictment for burglary of a habitation which did not specifically state where in Harris County the offense occurred was fundamentally defective and did not meet due process requirements and statutory requirements because it did not give him notice of the particular offense with which he was charged and it would not enable him to plead the judgment in bar of a subsequent prosecution for the same offense. In overruling this contention this Court held:

"[I]t is only necessary to allege the name of the county as the place where an offense was committed, (1) if the offense may be committed anywhere within the county, (2) the place where committed is not an element of the offense, and (3) the court in which the offense is tried has countywide jurisdiction." *Hodge* at page 292.

In *Nevarez v. State*, Tex.Cr.App., 503 S.W.2d 767, involving a conviction for carrying a pistol on licensed premises, the accused had presented a timely written motion to quash the indictment on the basis that the place of licensed premises was an element of the offense, the name of the owner of the premises must be shown, and without further definition of the premises involved the accused could not properly prepare his defense and he would be unable to base a plea of jeopardy on the judgment. In finding the trial court did not err in overruling the motion to quash, we held when an offense may be committed anywhere in the county it is only necessary to allege that the offense occurred within the county, and when an offense may be committed only in certain places designated by statute within the county, it is sufficient to allege the commission of the offense in the type or class of place without alleging the specific place within the type or class.

■ We find the indictment is not fundamentally defective because it does not specify with greater particularity the location of the offense.

■ The sentence recites the appellant "shall be confined in said Texas Department of Corrections, for 5 (five) years". In

---

2. *Bowen v. State*, Tex.Cr.App., 460 S.W.2d 421, cited by the dissent, holds that fingerprints *alone* may be sufficient to convict if the evidence shows that they must necessarily have been made at the time of the burglary. That proposition is not applicable here, since the State does not rely solely on the presence of appellant's wallet.

3. Any question as to whether the instant conviction concerns the alleged burglary at 800 Hollybrook or 804 Hollybrook is not before us inasmuch as appellant did not at any time seek a clarification, secure an instruction or request an election by the State. See *Hill v. State*, Tex.Cr.App., 544 S.W.2d 411.

compliance with Art. 42.09, V.A.C.C.P., the sentence is hereby reformed to reflect that appellant shall be confined for not less than two nor more than five years in the Department of Corrections.

As reformed, the judgment is affirmed.

ROBERTS, Judge, dissenting.

I cannot agree that the majority has correctly decided this circumstantial evidence case. The appellant is connected with the crime by two tenuous threads, neither of which is sufficient by itself, together, or with all the other facts of the case.

First, the recovery of the appellant's wallet on January 6 from the kitchen floor of 800 Hollybrook is deemed probative by the majority. There was no showing that it was put or otherwise left there during the commission of the burglary. In an analogous case, we held that fingerprints found at the scene of a burglary, without a showing that they must necessarily have been made at the time of the burglary, were insufficient to sustain the conviction. *Bowen v. State,* 460 S.W.2d 421 (Tex.Cr.App. 1970). Cf. *Stone v. State,* 396 S.W.2d 882 (Tex.Cr.App.1965). The mere presence of the appellant's wallet is not sufficient to sustain the verdict.

Second, the majority relies upon hearsay evidence to establish that the appellant had been riding in the car ". . . which, from the evidence presented was shown to have been involved in the burglaries."[1] Hearsay, of course, has no probative value. *Mendoza v. State,* 522 S.W.2d 898 (Tex.Cr. App.1975). Moreover, hearsay coupled with the evidence presented to show that the car

the appellant, a day after the burglary, had been riding in might have been used in the offense is insufficient to sustain the verdict.

In *Culmore v. State,* 447 S.W.2d 915, 916 (Tex.Cr.App.1969), the Court stated:

"In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The court will not assume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged."

In *Jackson v. State,* 536 S.W.2d 371, 375 (Tex.Cr.App.1976), we stated that "[t]he jury is not allowed to reach a verdict based upon speculation." The two factors upon which the majority relies are totally inadequate to exclude every reasonable hypothesis but guilt.

I would reverse the judgment and remand the case for a new trial.

DALLY, Commissioner.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

The appellant's motion for leave to file a motion for rehearing reasserts his contention that the indictment is fundamentally defective and the evidence is insufficient to support the conviction. We were and we are content with our original disposition of

1. The majority opinion states that "[T]he record is not clear as to how Metcalf determined appellant had arrived at Petty's house in the Cadillac." The majority opinion concedes that neither Petty nor Metcalf could have had personal knowledge that the appellant arrived in the Cadillac. The majority, however, fails to recognize that Metcalf testified that his conversation with the appellant during the time Metcalf was at Petty's house *was limited to the ownership of the car.* Thus, Jones was the only person present who could have informed Metcalf that the appellant arrived in the Cadillac. The record, however, shows that Metcalf's conversation with Jones during the time

Metcalf was at Petty's house was limited to the ownership of the car. Since it is clear that Metcalf did not have personal knowledge of the appellant's arrival in the Cadillac, cf. *Bright v. State,* 556 S.W.2d 317 (Tex.Cr.App.1977), and that Metcalf, the appellant and Jones discussed only the ownership of the Cadillac, Metcalf's testimony that the appellant arrived at Petty's house in the Cadillac must necessarily be based on hearsay evidence. The appellant has discharged his burden of showing that the evidence was hearsay. *Beal v. State,* 520 S.W.2d 907 (Tex.Cr.App.1975). Thus, the majority's reliance on *Durham v. State,* supra, is misplaced.

the appellant's complaint concerning the indictment, but the motion for leave was granted to reconsider our holding that the evidence is sufficient to sustain the conviction. After reconsideration we remain convinced that the evidence is sufficient to sustain the jury's verdict and the appellant's conviction for the offense of burglary.

 Stolen property taken in the burglary was found in the Cadillac automobile parked at the home of Wilburn Petty in Marshall. Circumstantial evidence indicated that the automobile had been used in the commission of the burglary. Petty had known the appellant all of his life, but Petty had only known Gary Jones, the appellant's cousin, for about one year. Petty was interrogated and testified:

"He [appellant] lived at 305 South Drive? That's before I lived there. All right. Lonnie Edwards lived at 305 South Drive? No, sir, he was living in Harleton. Did he ever live there, 305 South Drive, did he ever live with you? Now, he's been down there and spent the night with me. All right. Now, do you remember the day that the police officers came out to your house in January? I don't remember the date, but I remember, I know when they come out there. Do you remember the day that there was a white Cadillac parked in your driveway? Yes, sir. And what did that Cadillac have in the trunk of it? It had a stove and a dishwasher, they said. O.K. And who brought that up there to your house? Now, I wasn't there when they first come up there. I couldn't explain it. I don't know just who, which one was driving or nothing. Well how many people came up there with it? Well, when I got back to the house there was two there. And who were those two? Lonnie and, oh, I forget his name. I can't call his name good. It's—Gary Jones. Gary Jones, yes, sir. And did they talk to you, Lonnie and Gary? Yes, sir. And did they want to sell you anything? Well, sir, now, Gary tried to sell me that dishwasher and the stove. All right. And how much did he want for them? A hundred and twenty-five dollars is what they told me. Did you look at it to see whether it was old or new? Yes, sir. Well, I went out there and looked and it was new. It was new. Yes. Now, that night before, Lonnie Edwards hadn't stayed there with you that night, had he? No, sir. And that day he came up there with Gary Jones? Yes, sir. Now, who owned that white Cadillac? Well, Mr. Coleman said that he had sold it to Gary Jones. O.K. Was a hundred and twenty-five dollars a pretty good price for that? I imagine. Ain't no telling what it would have cost; ain't no telling. If you could have had it for a hundred and twenty-five, you'd have made a good deal. Yeah, but I didn't want it. When was it you didn't want it, Mr. Petty, when they brought it out there or when the law came out there? I don't want it no time. I knew it was something up or either—What suggested to you that something was up? Because it was all new stuff and it was too cheap for being, it was too cheap for being as good stuff as it was. And was Lonnie Edwards there when you and Gary were talking about the price? No, sir, I think he had went uptown somewhere. Now, I won't be for sure, but he wasn't there at the house. He wasn't there at the house? How did he go uptown? I don't know, sir, but—Aren't you sure that he was there at the house? * * * No, sir, he wasn't there at the house at that time, when he offered to sell it to me for that price. Was he there when the police got there? Yes, sir."

Although there are conflicting statements in Petty's testimony, and it is not clear and cogent testimony, it is the duty of the jury if it can, to resolve the conflicts and believe that portion of his testimony which they deem believable. From this testimony the jury could have believed that the appellant was claiming an interest in and attempting to sell the stolen property to Petty. Taking

that part of Petty's testimony and inferences which may be drawn from that testimony which support the jury's verdict, combined with evidence of finding the appellant's billfold in one of the houses burglarized, we hold the evidence is sufficient to support the jury's verdict and the appellant's conviction for the offense of burglary.

Appellant's motion for rehearing is overruled and the judgment is affirmed.

ROBERTS, J., dissents.

Opinion approved by the Court.