**DISSENT; Opinion Filed March 17, 2020**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00073-CV

## IN RE ALPHA-BARNES REAL ESTATE SERVICES, L.L.C., Relator

**Original Proceeding from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-14-01652-C**

## DISSENTING OPINION

Opinion by Justice Schenck

My colleagues wisely recognize that the trial court's ruling in this case presents risks of reversible error after trial, but conclude that the subsequent appellate remedy will be adequate to address that harm. As the majority notes, the real party in interest here has waived any *Prudential* concerns governing our mandamus review, including concerns with respect to relator's delay in filing its petition. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). I agree such waivers or stipulations are not binding on this Court's evaluation of the petition, though they do inform my review and animate both parties' concerns over the utility of further proceedings in the trial court without a decision from this Court. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367

(Tex. 1993) (orig. proceeding) (mandamus is a matter of discretion, not right). I believe my only disagreements with the majority are with the nature of the trial court's error, which I see as profound and systemically disconcerting, and with the mandamus standard, which I see as flexible insofar as the adequacy of the appellate remedy is concerned. *In re Prudential*, 148 S.W.3d at 136. Regardless of the waiver and stipulation, I would conclude there is in fact a clear abuse of discretion on this record and a lack of adequate remedy by appeal.[1] Accordingly, I dissent from the majority's denial of relator's petition.

## BACKGROUND

The real party in interest here and plaintiff below, Anthony Cooper, is an individual with intellectual disabilities. We are informed that he functions with the mental capacity of a four- to ten-year-old child. On or about May 4, 2012, while in the care of institutional caregiver Southern Concepts, Cooper suffered burn injuries. At that time, Cooper's assigned care provider, Sandra Guillory, an employee of Southern Concepts, enlisted her own uncle, Inell Fontenot, to care for Cooper in the evening at Fontenot's apartment. Through Charna Lewis, Cooper's mother and guardian of his person, Cooper reported and otherwise made statements, including a

---

[1] As noted hereafter, I would conclude the trial court's decision is both unreasonable and completely uninformed by guiding legal principles. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) ("A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without reference to guiding rules and principles."). Indeed, the trial court judge explicitly declined to be informed by the law governing her decision.

video-recorded forensic interview,[2] that he had been burned by either chicken grease or hot water in a pot on Fontenot's stove.[3] After the police and adult protective services investigated the incident, the State brought charges against Guillory and Fontenot. Lewis then applied for guardianship of Cooper's estate, indicating her intent to pursue civil actions against Southern Concepts, Guillory, and Fontenot for their respective responsibility for Cooper's burns, which she alleged were "the result of hot chicken grease being thrown on him by Sandra Guillory's Uncle." The petition in this case represents there was a suit against and settlement with Southern Concepts.

This subsequent lawsuit is brought by Lewis on behalf of Cooper and centers on relator Alpha-Barnes Real Estate Services, LLC ("Alpha-Barnes"), the property management company for the apartment complex in which Fontenot lives. The theory in this case is somewhat different from the earlier case against the caregivers. This suit is grounded on the theory that Cooper was burned by dangerously hot water from the faucet of a bathtub—not chicken grease or hot water in a pot on the stove.

---

[2] The petition describes Cooper's statements and refers to a video recording of a forensic interview of Cooper conducted by investigating authorities. However, the sworn record at this stage contains only a picture of the disk containing the video record.

[3] Fontenot offered differing explanations during the police investigation, first alleging Cooper was in the bathtub while Fontenot was frying chicken in the kitchen. He later stated that Cooper likely burned himself in hot water from the bathtub faucet. Lewis reported to the police that Guillory had told her Cooper was scalded by hot water in the shower.

Alpha-Barnes has retained four experts who are prepared to offer opinions in this case on the central question of causation. They will opine that Cooper's burns are more likely caused by hot grease consistent with Cooper's outcry to authorities. Cooper moved to strike the expert's opinions, arguing that a reasonable expert would not base his or her opinion in whole or part on the statements of an individual with intellectual disabilities, relying in part on a probate court's determination of Cooper to be incompetent.[4] The trial court declined to strike the experts but barred them from identifying or relying upon Cooper's own statements concerning how he was injured as the basis of their opinions on causation.[5] It is not clear from the record whether the trial judge will allow these statements or other evidence of chicken grease as a potential cause of Cooper's injury to be admitted at trial. Given the context of the trial court's decision, logic and the rules of evidence would seem to

---

[4] Cooper's motion included as an exhibit the deposition testimony of Cooper's treating psychiatrist Daniel Rouch, who stated that because Cooper was easily manipulated, "anything that he says without direct evidence confirming the truth of it would not be credible." Dr. Rouch also opined as to the credibility of specific statements Cooper had made regarding how he sustained his injuries. For example:

> Q: In that context when you are looking at this and you are telling the judge as a psychiatrist, Judge, credible or not credible, the June 11th, 2012, note?
>
> . . . .
>
> A: Knowing everything else around it, I see it as being uncredible.

[5] After granting "in part" Cooper's motions "by relying upon Anthony Cooper's statements," the order includes the following handwritten orders as follows:

> Experts . . . are hereby prohibited from mentioning Anthony Cooper's statements concerning how his injury occurred. They are furthered [sic] ordered not to mention or rely upon Anthony Cooper's statements of any method of his injury."

answer that question.[6] But regardless of speculation on that front, it seems plain that the trial court's decision amounts to a clear abuse of discretion that supports, if not necessitates, immediate correction by mandamus.

## DISCUSSION

Alpha-Barnes initially argues the trial court acted *sua sponte* in prohibiting the experts from mentioning Cooper's prior statements concerning how his injury occurred or from mentioning or "rely[ing] upon Anthony Cooper's statements of any method of his injury." Cooper's motion, however, requested the experts' opinions and testimony be excluded, and at the hearing, Cooper's counsel argued the experts should be instructed not to testify as to or otherwise discuss Cooper's prior statements.

As noted, the trial court's order leaves unclear whether Alpha-Barnes will be allowed by any other means to present evidence as to the basis for the experts' opinions, or whether the trial court determined any of Cooper's own statements are not admissible. I will begin by noting that this is a distinction without difference for purposes of mandamus review. Qualified experts are entitled to give opinions on matters that will assist the jury in reaching a decision, and factfinders are entitled to determine the credibility of those opinions. *See Creech v. Columbia Med. Ctr. of*

---

[6] As discussed below, the only conceivable basis for prohibiting the experts from addressing what is otherwise an admissible statement of a party opponent, given its substantive relevance, would be the conclusion that the declarant could not possibly make a statement that is truthful. While that determination is contrary to the rules and the relative functions of the judge and jury, it would, if made, by force of logic compel the conclusion that the statement could not be probative and admissible in any other way.

*Las Colinas Subsidiary, L.P.*, 411 S.W.3d 1, 15 (Tex. App.—Dallas 2013, no pet.) ("It is particularly within the jury's province to weigh opinion evidence and the judgment of experts."); HULEN WENDORF ET AL.*,* TEXAS RULES OF EVIDENCE MANUAL VI-3 (3d ed. 1991) ("What at common law was treated as incompetence has now generally become only grounds for impeachment.").

**A Statement of a Party Opponent Is Admissible So Long As It Is Relevant**

Under Rule 703 of the Texas Rules of Evidence, an expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed or personally observed. *See* TEX. R. EVID. 703.[7] Further, the facts and data experts rely on need not be admissible. *See id.* Thus, experts are entitled to rely on any evidence relevant to their determinations and certainly on evidence admissible at trial, including the admission of a party opponent. *See id.* & 801(e)(2). The only constraint on an expert's ability to identify the basis for his or her opinion—and jurors' right to hear and evaluate it—is relevance. *See id.* 705(d); *see also, e.g.*, *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 711 (Tex. App.—Dallas 2012, no pet.) (noting expert admitted no relevant information for two of prongs of stated methodology). Relevant evidence, of course, is any "evidence

---

[7] Rule 703 provides as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

TEX. R. EVID. 703.

having *any tendency* to make the existence of a fact that is of consequence . . . more or less probable than it would be without the evidence." TEX. R. EVID. 401 (emphasis added). Thus, a statement on a topic of relevance need only be possibly true in order to be admitted. *See id.* Whether it is, in fact true, or the basis for a reliable expert opinion is a point for potential argument and decision by a fact-finder with the final responsibility for making credibility determinations, regardless of who the declarant might be.

Here, no one disputes that Cooper's prior statements were made or that the statements are directly probative of the controlling issue. Cooper cites us no law, and I would be disinclined to create it, that suggests that those who struggle with intellectual disabilities are inherently so afflicted that their statements cannot be treated as possibly germane to the topic in a court of law. Such a rule would be offensive, unfair, and counter-productive in any civil or criminal proceeding involving an outcry concerning mistreatment and neglect. For that reason, it was rejected even before the enactment of the modern rules of evidence. *See, e.g., Sanchez v. State*, 479 S.W.2d 933, 939 (Tex. Crim. App. 1972) (female victim of sexual abuse competent to testify despite being incapable of consenting to the underlying act). Indeed, creating such a rule at this late date would be difficult to square with controlling federal law. *See* 42 U.S.C. § 12101 *et seq*. (Americans with Disabilities Act of 1990).

**Cooper's Competency to Take the Stand Is Not at Issue and Not Subject to a Presumption That His Testimony Lacks Veracity in Any Event**

Cooper's arguments before us focus on a much different and broader question than relevance and admissibility of an out-of-court statement. Cooper points to rules governing a witness's competency to take the stand as a witness, suggesting that Alpha-Barnes had the burden to rebut a presumption that Cooper is incapable of providing truthful testimony on account of his intellectual disability.[8] Stated more directly, Cooper urges that the trial court acted on an implied legal "presumption" that Cooper's testimony—because of his intellectual disability—is false absent a separate expert to vouch for his credibility.[9] Resp. at 10–11. As noted above, this rationale is not directed at his out-of-court statement or its admissibility. And, as detailed below, while the conclusion necessary to exclude such an out-of-court statement—i.e., that it is invariably false—would at least logically embrace this broader question (and presumably signal the trial court's decision that no statements of Cooper's should be heard by the jury), even this rationale would not support the trial court's decision.

---

[8] In fact, at the hearing on the motion to exclude, Cooper's counsel argued, "The facts are that insane persons are not competent to testify, mentally retarded persons under Rule 601(a)(1) are incompetent to testify." The trial judge responded, "I would agree with you generally speaking."

[9] The trial judge stated, "But when the person has already been considered incompetent, [the experts] should not be allowed to rely on [that person's statements] unless you have someone that can show that Anthony is competent to talk." She further determined that based on their respective specialties, none of the experts was qualified determine whether Cooper was "competent to talk."

To begin, Cooper's reliance on authority governing witness competence is legally indefensible and contrary to established law. Those suffering from intellectual disabilities are not presumptively incompetent to testify at trial. *See Hogan v. State*, 440 S.W.3d 211, 213–14 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (" . . . if an intellectually disabled person 'possesses sufficient intelligence to receive correct impressions of events [she] sees, retains clear recollection of them and is able to communicate them through some means there is no reason for rejecting her testimony.'") (citing *Watson v. State*, 596 S.W.2d 867, 870–71 (Tex. Crim. App. 1980)).

Cooper's argument to the contrary relies on Rule 601 of the Texas Rules of Evidence. That rule begins with the declaration that "every person is competent to be a witness unless these rules provide otherwise." TEX. R. EVID. 601(a). Rule 601(a)(1) goes on to provide, "A person who is now insane or was insane at the time of the events about which the person is called to testify" is incompetent to testify, and subsection (2) provides, "A child—*or any other person—whom the court examines and finds lacks sufficient intellect to testify* concerning the matters in issue" is incompetent to testify. *Id.* (emphasis added). This record does not establish Cooper is insane or that the trial court has examined him for these purposes.

Instead, Cooper relies on *Hunter v. NCNB Texas National Bank*, a nearly thirty-year-old decision from a sister court of appeals, which, in addition to not being binding on this Court, did not address the question presented here. 857 S.W.2d 722,

–9–

727 (Tex. App.—Houston [14th Dist.] 1993, writ denied). In *Hunter*, the court held that where a non-party witness had been found by another court in a guardianship proceeding to be an incapacitated person, a rebuttable presumption of incompetency to testify arose regarding appellant's homestead claim. *See id.* at 724–27.[10] Here, as noted, we are not dealing with Cooper's ability to appear or testify at trial; rather, we are faced with experts' ability to state the bases for their opinions. The question of Cooper's competence to appear as a witness at trial is not the question at this stage. Thus, Cooper's reliance on *Hunter* is unavailing.

**Experts Are Entitled to Rely on Admissible Relevant Evidence**

It should go without saying that experts are entitled to base their testimony on facts or data that are of a type reasonably relied upon by experts in their field of expertise. *See Elizondo v. Krist*, 415 S.W.3d 259, 263 (Tex. 2013) (citing TEX. R. EVID. 703). As noted above, Cooper's own statements as to the cause of his injury are admissible as a non-hearsay admission by party opponent and, perhaps, as statements against interest. *See* TEX. R. EVID. 801(e)(1)(A), 803(24). The answer to that question of their admissibility is not dependent on the existence or character

---

[10] The one case *Hunter* cites in support of its "presumption" of incompetence, *Mobil Oil v. Floyd*, 810 S.W.2d 321, 323 (Tex. App.—Beaumont 1991, orig. proceeding), notably makes the point that competence to appear as a witness is separate from the ability to provide relevant evidence in discovery and grants mandamus relief on that basis. *Id.*; *see also* WENDORF*, supra* VI-6 "(A prior adjudication of insanity or mental illness is not sufficient, by itself, to support a finding of incompetence.") (gathering cases); *Rodriguez v. State*, 772 S.W.2d 167, 170 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (discussing then new rule 601 and noting it "creates a presumption that a person is competent to testify" and tracks prior statute to the same effect).

of Cooper's intellectual disabilities. *See McNair v. State*, 75 S.W.3d 69, 73 (Tex. App.—San Antonio 2002, no pet.) ("McNair has failed to cite, nor have we been able to find, any case law holding that a mentally ill defendant cannot make admissions under Rule 801(e)(2)(A). To the contrary, McNair's sanity was a fact issue to be determined by the jury."). Moreover, as noted above, the question here arises in the context of admissible expert opinions, which need not rely on admissible evidence. *See* TEX. R. EVID. 703. It is true that "[c]ourts must rigorously examine the validity of the facts and assumptions on which expert testimony is based," but this does not mean that an expert's factual assumptions must be uncontested or established as a matter of law. *See Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 832–33 (Tex. 2014). Instead, if the evidence conflicts, it is the province of the jury to determine which evidence to credit. *See id.* at 833.

As Cooper's own arguments reveal, the only rational interpretation of the trial court's order is that the trial judge believes persons with intellectual disabilities are invariably not credible and that their statements are inadmissible for their truth at trial. During the hearing on the motion to exclude, Cooper's counsel attempted to provide relevant, contrary case law to the trial judge. The trial judge declined to hear it, stating, "I generally don't need the law. I just need to know the facts." This statement is troublesome and inconsistent with the trial judge's obligation to both parties.

–11–

**Mandamus Relief Is Proper**

Regardless of its rationale, the trial court's order deprives the parties of the opportunity to present or examine the basis of the experts' opinions the jury will receive. It may also signal a decision—unavoidable if logic controls here—to exclude Cooper's own testimony. In either case, the decision at this stage amounts to a clear abuse of discretion and is unfair to both parties, both of whom understandably anticipate the probability of reversal of the ultimate trial outcome on this ground.[11]

Regardless of how many erroneous rationales are ultimately at work here, the parties are entitled to review of the trial court's order under the standard set forth in *Walker v. Packer* and the more modern standard of *In re Prudential*, which revised our understanding of the adequacy of a remedy by subsequent appellate review. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding) (meaning of adequate review in this context has "no comprehensive definition" and encompasses private interests in delay and costs as well as public interests in the development of the rule of law); *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (requiring relator establish "the effective denial of a reasonable opportunity to

---

[11] The mandamus record includes a Rule 11 Agreement between the parties in which they agree the ruling contained in the challenged order "will have a significant impact on the presentation of evidence at trial, and could have a significant effect on the outcome of the trial." The parties further agree "that it would be in the best interest of the Parties and the Court to present the November 26, 2018 Order to the Court of Appeals before entering into trial." The November 26, 2018 order is the trial court's order precluding Alpha-Barnes's experts from mentioning Cooper's statement concerning chicken grease.

develop the merits of his or her case, so that the trial would be a waste of judicial resources").

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*In re Prudential,* 148 S.W.3d at 136.

With respect to Alpha-Barnes's delay in appealing the order signed in November 2018, the parties agreed to waive any prejudice due to the delay. I agree with my colleagues that Cooper's waiver cannot be controlling on our discretionary judgment of whether mandamus relief is proper. Nevertheless, its existence is highly significant. *See id.* at 138 ("Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles."). Both parties appreciate the probability of a trial infected with reversible error from its inception, resulting in a complete waste of judicial and party resources. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 466 (Tex. 2008) (orig. proceeding) ("By contrast, insisting on a wasted trial simply so that it can be reversed and tried all over again creates the appearance not that the courts are doing justice, but that they don't know what they are doing."); *In re Prudential*, 148 S.W.3d at 136 (noting "adequate" in "adequate remedy" simply proxy for careful balance of jurisprudential considerations); *see also In re Garza*, 544 S.W.3d 836, 841 (Tex. 2018) (orig. proceeding) ("Appeal is not an

adequate remedy where the practically certain effect of the [error] will be reversal with the attendant waste of resources and time.").

I would conclude the parties' waiver and stipulation, together with the clear errors discussed above, dictate a grant of Alpha-Barnes's petition for writ of mandamus. Accordingly, I dissent from the denial of Alpha-Barnes's petition for writ of mandamus.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

200073d.p05