

# NUMBER 13-19-00337-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JAVIER ALONZO,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

## On appeal from the 398th District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Chief Justice Contreras**

A jury convicted appellant Javier Alonzo of one count of aggravated sexual assault of a child, a first-degree felony, and three counts of indecency with a child by contact, a second-degree felony.[1] *See* TEX. PENAL CODE. ANN. §§ 22.021(a)(2)(B), 21.11(A)(1).

---

[1] The indictment included five counts. Count One was dismissed.

Each count contained an enhancement paragraph alleging appellant was previously convicted in 1983 of indecency with a child by exposure, to which appellant pleaded "true." *See id.* § 21.11(a)(2)(A). Consequently, appellant received an automatic life sentence. *See id.* § 12.42(c)(2)(A)(i). Appellant appeals his conviction, arguing by five issues that (1–4) his trial counsel was ineffective, and (5) the judgment contains "countless errors" requiring correction. We affirm.

## I. BACKGROUND

### A. Trial Evidence

The State elicited testimony at trial that appellant operated a tax company called "Safe Tax" from 2005 through at least 2014. Appellant hired A.A., born in October of 2000, and A.T., born in December of 1998, to work "counting receipts."[2] A.T. worked for appellant from October 2012 through January 2013 three or four days a week for two or three hours after school. A.A. worked most days for appellant from December 2012 through August 2013 from 8 a.m. to 5 p.m. during the summer and limited hours during the school year.[3] A.T.'s and A.A.'s employment at Safe Tax only briefly overlapped. The two girls and appellant all attended the same church, which is where they met.

In April 2016, A.A. informed her mother that appellant sexually assaulted her during her employment at Safe Tax. A.A.'s mother, G.A., immediately called the police. Investigator Marco Antonio Mandujano was assigned to the case, and he set up a forensic interview for A.A. at the Children's Advocacy Center. A.A. testified that, on three

---

[2] Given the nature of this case, we utilize aliases for the children and related parties. *See* TEX. R. APP. P. 9.8(c).

[3] The exact dates of A.A.'s and A.T.'s employment at Safe Tax are unclear and form the basis for appellant's fifth point of error, addressed later in this memorandum opinion.

2

occasions when she was "like 12," appellant called her into his office, shut the door, and sexually assaulted her.[4]

During A.A.'s interview, Mandujano learned that when A.A. initially began working at Safe Tax, A.T. was also working there. The day after A.A.'s interview, Mandujano contacted A.T.'s mother, M.C., to ask if he could interview A.T. as a potential witness in an ongoing investigation. M.C. agreed. Mandujano interviewed A.T. at her home. During the interview, A.T. informed Mandujano that she too was sexually assaulted by appellant. Mandujano immediately ended the interview and asked and received permission from M.C. to bring A.T. to the Children's Advocacy Center for a forensic interview. At the interview, A.T. recounted three occasions during her stint at Safe Tax during which appellant made inappropriate comments or sexually assaulted her.

Safe Tax office manager and part-owner Elizabeth Acosta; appellant's daughter and Safe Tax employee Ruby Alonzo; and Safe Tax receptionist Enedina "Nedy" Segovia, testified on appellant's behalf. Each witness testified that the Safe Tax office was fairly small, that they were always in the office when A.A. or A.T. were there, that appellant wouldn't let anybody into his personal office without permission, and that they never saw A.A. or A.T. alone with appellant.

The jury convicted appellant on the four counts described above, and appellant received an automatic life sentence.

## B.    Motion for New Trial

Appellant filed a motion for new trial in which he asserted ineffective assistance of

---

[4] A.A. and A.T. both detailed their assaults in their respective testimony. A reiteration of those details is not necessary here as they do not bear on the outcome of this case.

3

counsel.[5] Appellant first argued that his trial counsel was ineffective by allowing appellant to plead "true" to the enhancement paragraphs in the indictment. Specifically, appellant averred that: (1) trial counsel did not inform him that the effect of the enhancement would be an automatic life sentence upon conviction; and (2) the State would not have otherwise been able to prove the prior conviction because the 1983 judgment lacked appellant's thumbprint. Trial counsel testified at the new trial hearing that he informed appellant numerous times how a plea of "true" would affect his sentence if convicted. Appellant accurately summarizes trial counsel's testimony at the hearing as follows:

> At the Motion for New Trial hearing, trial counsel stated he became aware of and discussed the enhancement with Appellant prior to trial and did not object to Appellant pleading true, as a trial strategy. Trial counsel stated he discussed the previous criminal history with Appellant multiple times and how it would impact his trial. "From day one [appellant] did not want to testify, but especially after the notice of enhancement was filed, he refused to testify, so the only thing that came to mind in that particular circumstance is we didn't want the jury to find out that he had a prior case [of indecency with a child by exposure] out of Willacy County." Trial counsel also stated he discussed multiple times with Appellant that a verdict of guilty would result in an automatic life sentence. "As a matter of fact, I think it was also explained by the Court, we admonished him before the Court. I believe the offer was 20 years. I think the Court admonished him as far as [a life sentence] was concerned, and multiple times I explained it's automatic life." Trial counsel also discussed the State had the burden to prove up the prior judgement and the plea of true would remove the burden.

Appellant argued, nonetheless, that trial counsel's performance was deficient and that but for such deficient representation, appellant "could have avoided an automatic life sentence," and appellant would not have lost his ability to challenge the sufficiency of the evidence supporting the prior conviction.

---

[5] Appellant was not present at the scheduled hearing on his motion for new trial. The trial court signed two bench warrants, each of which apparently arrived at the relevant Texas Department of Criminal Justice facility after appellant had already been transferred to a new facility.

Appellant also argued that trial counsel was ineffective by "failing to produce testimony which would have assist[ed] in challenging the credibility of the alleged victims' testimony." More particularly, appellant claimed that trial counsel failed to "seek out and interview potential witnesses." Appellant listed and attached affidavits from three witnesses in his motion for new trial, the testimony of whom he claims "would have compromised the credibility of the alleged victims' testimony and the veracity of their allegations." In his motion for new trial, appellant accurately summarized the witnesses' written testimony as follows:

(1)     Here, defense counsel was ineffective in his investigation, given the critical information available from [C.L.T.]. [C.L.T.] is one of the alleged victim's cousins and would have testified that she told [A.T.]'s family about [A.T.'s] provocative behavior at school with one of her boyfriends. [A.T.] would later get into trouble at home and her father punished her after finding out about that behavior. [A.T.] later threatened revenge against the Alonzo family for this. This witness was not interviewed; nor was she brought before the jury at the time of trial. Had she been incorporated into the defense; [appellant] avers the result at trial would have been different.

(2)     Further, defense counsel was ineffective in his investigation, given the critical information available from [appellant's wife] Nancy Alonzo. An effort was made at trial to show that [A.A.] was so affected by the allegations made the basis of this prosecution that she was caused to attend counseling sessions in order to help her cope. Had Nancy Alonzo's testimony been presented, it would have been shown [A.A.] was sneaking out of the house, being rebellious and she was actually partying and consuming liquor on a regular basis *with* her mother—the same mother who testified how devastated she was as a result of these allegations.

(3)     Further, defense counsel was ineffective in his investigation, given the critical information available from [appellant's niece,] [E.P.]. This individual had information, which if presented to the jury during the trial would have shown that [A.A.] made efforts to accuse [appellant] of sexually abusing *this* witness too. [A.A.] told her parents that [E.P.] was abused too. [E.P.] would have told this jury that never happened and this would have shed light on the victim's motive to lie/fabricate,

5

clearly compromising her credibility and further challenging the veracity of her allegations.

Appellant accurately summarizes trial counsel's testimony regarding the potential witnesses as follows:

[Trial counsel] was hired by Appellant in April of 2016, three years before the trial began on April 8, 2019. [He] testified that he would be guessing, but he probably met with Appellant 15 to 20 times, at the office. [He] was aware of the State's witness . . . list that included the names of [E.P.], [C.L.T.,] and Nancy Alonzo.[6] [He] testified that he never investigated or tried to contact these witnesses. . . . He further testified that one of the witnesses was supposed to come to his office but they never did. "As a matter of fact, even during the trial we were supposed to—they were supposed to bring those witnesses over here, and it was a circumstance where they were never presented." "I needed to speak with them before. . . . I asked [appellant], I asked his daughter, which I met for the first time, I think, during the trial. I asked his assistant . . . . I asked everybody that was part of the trial to bring these witnesses to court and that we would make a determination whether or not we would call them."

[Trial counsel] agreed with the State that the information contained in the affidavits, presented with the Motion for New Trial, were hearsay, impeachment, "might not have been admissible" and "could possibly have opened the door to the State to bring otherwise inadmissible evidence." "This was something that was discussed as a group outside the courtroom and at my office potentially during the trial. Had these—at least one of these witnesses been made available, I would have interviewed this witness and found out if there was anything that was usable that was admissible by rules of evidence. I never got to speak to these witnesses, so at least what's alleged in the—in the motion and in the affidavits . . . . From what I was told, as far as to that one witness, I believe it would have been inadmissible under a rape shield."

After hearing the testimony, the trial court denied appellant's motion for new trial.

This appeal followed.

---

[6] The State listed twenty-seven witnesses. Nine State's witnesses were called at trial. E.P., C.L.T., and Nancy Alonzo were not among the witnesses called.

## II.     INEFFECTIVE ASSISTANCE OF COUNSEL

By his first four issues, appellant contends that his trial counsel was ineffective. We first address appellant's claims initially raised in his motion for new trial.[7]

### A.     Standard of Review and Applicable Law

Individuals in a criminal prosecution are guaranteed the right to assistance of counsel by the Sixth Amendment to the United States Constitution and § 10 of Article 1 of the Texas Constitution. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Lopez v. State*, 343 S.W.3d 137,142 (Tex. Crim. App. 2011). The United States Supreme Court and the Texas Court of Criminal Appeals have adopted a two-pronged test to determine whether a criminal defendant received ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 54–55 (Tex. Crim. App. 1986). "First, an applicant must demonstrate deficient performance by showing that his attorney's representation fell below an objective standard of reasonableness, as judged by prevailing professional norms." *Ex parte Garcia*, 486 S.W.3d 565, 568–69 (Tex. Crim. App. 2016) (Alcala, J. dissenting) (citing *Strickland*, 466 U.S. at 690). To do so, an applicant must overcome the strong presumption that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 687; *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (noting that to defeat the presumption of reasonable assistance of counsel, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness").

---

[7] The Texas Court of Criminal Appeals has previously held that a defendant does not waive his right to appeal on the grounds of ineffective assistance of counsel through inaction at the trial court. *Robinson v. State*, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000).

"There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The right to assistance of reasonably effective counsel "does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

Second, an applicant must demonstrate prejudice by establishing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695; *Ex parte Martinez*, 330 S.W.3d 891, 903–04 (Tex. Crim. App. 2011). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

When, as in the first two issues addressed in this case, ineffective assistance was first urged in a motion for new trial, we review the two *Strickland* prongs through the prism of the abuse of discretion standard. *See Robinson v. State*, 514 S.W.3d 816, 823 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Cueva v. State*, 339 S.W.3d 839, 857 (Tex. App.—Corpus Christi–Edinburg 2011, pet. denied). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). A trial judge abuses his discretion in denying a motion for new trial when no reasonable view of the record could support his ruling. *Id.* We view the evidence in the light most favorable to the trial judge's ruling and presume the judge made all reasonable factual findings

against the losing party. *Id.* At a motion for new trial hearing, the trial court alone determines the credibility of the witnesses. *Id.*

## B.     Prior Conviction

By his first issue, initially raised in his motion for new trial, appellant alleges that trial counsel was ineffective by "allowing" appellant to plead true to the enhancement paragraphs in his indictment "when the evidence was legally insufficient to support an enhancement."

### 1.     Applicable Law

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that: (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. *Id.* A certified copy of a final judgment and sentence is one method of proof. *See id.* The factfinder "fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece," looking to the totality of the evidence to determine whether both elements are proven beyond a reasonable doubt. *Id.* at 923.

Texas courts have held that a defendant's stipulation or plea of "true" to a prior conviction is tantamount to a judicial admission, thereby relieving the State of its requirement to prove the prior convictions. *See Bryant v. State*, 187 S.W.3d 397, 402 (Tex. Crim. App. 2005); *Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984); *see also Kuhel v. State*, No. 13–09–00180–CR, 2011 WL 3821025, at *2–3 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2011, no pet.) (mem. op., not designated for publication).

9

## 2.    Analysis

Appellant argues that the lack of his thumbprint on his 1983 judgment would have thwarted the State's ability to prove his prior conviction beyond a reasonable doubt, and accordingly, that trial counsel should not have advised appellant to plead true to the enhancement paragraphs. But trial counsel testified that appellant wanted to do anything possible to keep his prior conviction from the jury. And, despite informing appellant on numerous occasions about the potential consequences of stipulating to his prior conviction, appellant wanted to do so, nonetheless. Accordingly, "as a trial strategy," trial counsel (1) filed a motion to stipulate to the prior conviction, which requested that the State be barred from raising the prior conviction at trial—and the State, indeed, refrained from raising the issue at trial; and (2) counseled appellant to plead true to his prior conviction.[8]

Trial counsel was asked at the hearing how evidence of the prior conviction could have prejudiced appellant during the guilt-innocence phase of trial, as opposed to just the sentencing phase, and he answered:

> [T]here are other circumstances that I believe that State is aware of, . . . and there are other circumstances that I'm aware of that were very tricky for the defense of this case[,] . . . part of it is opening the door, but part of it is stuff that nobody knows about, so it was very delicate in that circumstance.

Reviewing the new trial hearing testimony in a light most favorable to the trial court's ruling, we cannot state that it was unreasonable for the trial court to find that trial counsel did not err by advising appellant to plead true to his prior conviction. *See*

---

[8] Appellant's motion to stipulate was raised before the trial court, but the record does not clearly indicate a ruling on the motion. However, the record reflects that when the trial court asked appellant at trial for his plea to the enhancement paragraphs, appellant pleaded "True." *See Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984).

*Strickland*, 466 U.S. at 689; *Ex parte Garcia*, 486 S.W.3d at 568; *Colyer*, 428 S.W.3d at 122.

We overrule appellant's first issue.

## C.    Failure to Investigate

By his third issue, also raised initially in his motion for new trial, appellant argues that his trial counsel was "ineffective by failing to complete a full investigation of the available defenses . . . and witnesses, which would have produced testimony assisting in challenging the credibility of the victims' testimony." The State argues in response that: (1) appellant has failed to "show that the specific witnesses and the information they possessed should have been readily known to defense counsel"; and (2) the "evidence admitted as affidavits during the motion for new trial were replete with hearsay and unsubstantiated conjecture that was not and would not have been admissible at trial."

### 1.    Applicable Law

In the context of an ineffective assistance claim, a criminal defense lawyer's duty to investigate includes seeking out and interviewing potential witnesses. *Brennan v. State*, 334 S.W.3d 64, 71 (Tex. App.—Dallas 2009, no pet.). When an appellant bases his claim of ineffective assistance on his counsel's failure to call witnesses, the appellant must show (1) that such witnesses were available to testify and (2) that he would have benefitted from their testimony. *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004) (citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)); *see also Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007) (order) (per curiam). In addition, the appellant must present some evidence to rebut the presumption that counsel exercised sound trial strategy by not calling the witnesses in question and specifically to

rebut the possibility that trial counsel did not feel the witnesses were material or credible. *See Moreno v. State*, 1 S.W.3d 846, 865 (Tex. App–Corpus Christi–Edinburg 1999, pet. ref'd). The reviewing court should not second guess counsel's decision to not call a witness when "the testimony was a 'double-edged sword' that could have hurt more than it helped." *De Pena v. State*, 148 S.W.3d 461, 470 (Tex. App—Corpus Christi–Edinburg 2004, no pet.).

### 2. Analysis

As noted above, trial counsel was questioned as to why he did not contact the three witnesses whose testimony appellant states would have benefitted his case. Trial counsel testified that he met with appellant fifteen to twenty times over three years and discussed potential witnesses with appellant. Acosta, appellant's business partner and office manager, provided trial counsel with the three witnesses' names, but not their contact information. To trial counsel's recollection, one of the three witnesses was supposed to discuss their testimony with him, but the witness never arrived at trial counsel's office, and trial counsel did not follow up. The three witnesses were supposed to arrive at trial to discuss their testimony with trial counsel so he could "make a determination whether or not we would call them," but they never did.

Trial counsel read the three new trial witnesses' affidavits and agreed with the State that (1) their contents "contain[] hearsay and several other specific instances of conduct"; and (2) "could possibly have opened the door to the State bringing in otherwise inadmissible evidence." In fact, according to trial counsel, avoiding certain witness testimony that could open the door "was part of the trial strategy from day one because we were made aware of other potential victims. And opening the door was a very, very

12

delicate matter during the trial." Trial counsel believed the testimony may have, in any event, been inadmissible under rape shield laws. *See* TEX. R. EVID. 412. Finally, trial counsel stated that part of his reason for not calling the witnesses is "privileged information."

The first proposed witness, E.P., testified at the new trial hearing that she was aware of appellant's trial. E.P. was subpoenaed by the State to appear at trial but did not show up because the State noted it would call her if it needed her. E.P. never reached out to trial counsel and "thought" but was "not sure" if she informed appellant that she had information that might help him.

The second proposed witness, Nancy Alonzo, testified at the new trial hearing that the State subpoenaed her, but she was unable to attend the trial because she was sick and in the hospital. Alonzo never spoke with trial counsel, but gave the information stated in her affidavit to appellant before trial. Alonzo noted that she informed Acosta of the information as well, but she does not know if Acosta relayed the information to trial counsel.

The third proposed witness, C.L.T., testified at the new trial hearing that she never spoke with trial counsel. C.L.T. spoke with Acosta about the information contained in C.L.T.'s affidavit but provided appellant with the information in her affidavit only after trial.

Finally, Acosta testified at the new trial hearing that she would accompany appellant and trial counsel in their meetings before and throughout trial. Acosta noted that appellant and trial counsel knew that the three witnesses had some information, but not the specifics of their potential testimony. According to Acosta, trial counsel told her to wait until trial to present him with the witnesses' potential testimony. Moreover, contrary to

13

Alonzo's claims, Acosta stated that Alonzo was out of the hospital and available to testify at appellant's trial. And, while none of the three witnesses' affidavits or testimony indicated they were available, Acosta stated that all three witnesses were available to testify at trial. The State asked Acosta how she knew the witnesses were all available, and she answered, "When they told us . . . ."

The trial court ruled on the record that it "got nothing from [E.P.]" because her testimony was based on hearsay; that Alonzo was not available to testify because she was in the hospital; that C.L.T. did not give her information until trial concluded, and that trial counsel may have strategized to keep C.L.T.'s testimony out; and that Acosta did not inform trial counsel of any of the three witnesses' testimony. Accordingly, the trial court denied appellant's motion for new trial.

Based on the evidence presented at the new trial hearing, we cannot state that the trial court's ruling was unreasonable or arbitrary. *See Colyer*, 428 S.W.3d at 122. The trial court alone determines the credibility of the witnesses, and it concluded that Alonzo was unavailable to testify notwithstanding Acosta's testimony to the contrary. *See id.*; *Ex parte White*, 160 S.W.3d at 52. A review of E.P.'s affidavit indicates that her testimony is indeed largely based on inadmissible hearsay—a conversation between her parents and A.A.'s mother, G.A.—and would thus be unlikely to assist appellant at trial. *See Ex parte White*, 160 S.W.3d at 52. And the trial court was free to conclude that appellant failed to rebut the presumption that trial counsel's decision to not elicit C.L.T.'s or E.P.'s testimony was an exercise in sound trial strategy or that trial counsel did not find the witnesses' testimony material or credible. *See Moreno*, 1 S.W.3d at 865. Indeed, while eliciting testimony of an alleged revenge plot against appellant might have helped appellant's case, trial counsel

14

stated that the testimony was likely based on inadmissible hearsay and character evidence and had the potential to open the door to testimony detrimental to appellant's case. *See De Pena*, 148 S.W.3d at 470.

Finally, the evidence presented at the new trial hearing indicates that trial counsel met with appellant and Acosta on numerous occasions to discuss appellant's case. Trial counsel was not informed of the three new witnesses' exact testimony before trial, even though at least one witness testified that she told appellant of her proposed testimony before trial. Trial counsel called four witnesses at trial, including Acosta, eliciting testimony that A.A. and A.T. were never alone with appellant. Based on the record, and viewing the evidence in a light favorable to the trial court's ruling, we conclude the trial court did not err by holding that appellant's trial counsel was not ineffective by his alleged failure to investigate. *See Colyer*, 428 S.W.3d at 122; *Brennan*, 334 S.W.3d at 71.

We overrule appellant's third issue.

## D.    Failure to Object to Rule Violation

By his second issue, raised for the first time on appeal, appellant argues that his counsel was ineffective by failing to object to A.A. and A.T.'s purported violation of Texas Rule of Evidence 614. *See* TEX. R. EVID. 614.

### 1.    Applicable Law

"The procedure of excluding witnesses from the courtroom is commonly called putting the witnesses 'under the rule.'" *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005); *see* TEX. R. EVID. 614. When a party invokes the rule, or it is invoked on the court's own motion, the trial court orders witnesses to remain outside the courtroom so that they cannot hear other witnesses' testimony. TEX. R. EVID. 614*; see Routier v. State*,

15

112 S.W.3d 554, 590 (Tex. Crim. App. 2003). The rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony. *Russell*, 155 S.W.3d at 179. Witnesses, when placed under the rule, "shall be instructed by the court that they are not to converse with each other or with any other person about the case, except by permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under" the rule. TEX. CODE CRIM. PROC. ANN. art. 36.06; *Qualls v. State*, 547 S.W.3d 663, 676–77 (Tex. App.—Fort Worth 2018, pet. ref'd). If the rule has been invoked, even a witness not yet sworn or admonished about the rule violates it by listening to testimony or talking about it. *Qualls*, 547 S.W.3d at 677.

A violation of the rule, however, is not necessarily reversible error. *Archer v. State*, 703 S.W.2d 664, 666 (Tex. Crim. App. 1986); *Qualls*, 547 S.W.3d at 677. A trial court has discretion to admit the testimony from a witness who violated the rule. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996); *Qualls*, 547 S.W.3d at 677. An abuse of discretion occurs when the violative testimony harms or prejudices the defendant. *Archer*, 703 S.W.2d at 666.

> When "two or more State['s] witnesses violate the rule by conferring on an issue bearing on the guilt or innocence of the accused and about which they later testify, injury or prejudice flows from testimony that either corroborates another witness for the prosecution or contradicts defensive testimony on that issue."

*Qualls*, 547 S.W.3d at 677 (quoting *Archer*, 703 S.W.2d at 667).

### 2. Analysis

The rule was invoked in this case. The basis for appellant's Rule 614 argument stems only from A.A.'s testimony, elicited by trial counsel, indicating the following:

16

Q. Was it—is it safe to say [you and A.T.] were friends at that time?

A. Yes.

Q. And you aren't friends anymore?

A. No. I don't really talk to her that much anymore.

Q. Okay. Explain don't really talk too much?

A. What?

Q. Do you talk or do you not talk?

A. No, we don't talk.

Q. Do you see each other?

A. No.

Q. Okay. When is the last time y'all talked?

A. Like a little while ago when we were outside.

Q. Okay. And before that?

A. Like more than two years probably.

Appellant argues that trial counsel should have objected to the alleged conversation that happened "outside" as violative of the rule, or "request[ed] to voir dire, move[d] to strike, request[ed] the trial court to instruct the jury to disregard A.T. and A.A.'s testimony[,] and request[ed] a mistrial." Appellant argues that trial counsel's performance was deficient given trial counsel's failure to take the abovementioned actions.

As to whether their conversation "outside," on its face, was violative of the rule, we cannot glean from the record whether A.A. and A.T. discussed an issue "bearing on the guilt or innocence of [appellant] about which they [would] later testify." *See Qualls*, 547 S.W.3d at 677. Indeed, there are no facts in the record as to when and where exactly the conversation took place or what was discussed. Accordingly, trial counsel's failure to

17

object was not deficient, as even if he did object, the trial court would be unable to deduce whether the rule was violated or if appellant suffered harm flowing from that violation. *See id.*

We also cannot conclude that it was unreasonable in this case for trial counsel not to "request to voir dire, move to strike, request the trial court to instruct the jury to disregard A.T. and A.A.'s testimony[,] and request a mistrial." There is no testimony in the record bearing on trial counsel's decision not to do so. Therefore, "appellant has failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Strickland*, 466 U.S. at 700 ("Failure to make the required showing of . . . deficient performance . . . defeats the ineffectiveness claim."); *Thompson*, 9 S.W.3d at 814 ("The record in the case at bar is silent as to why appellant's trial counsel failed to object . . . . Therefore, appellant has failed to rebut the presumption [that] this was a reasonable decision.").

Accordingly, we overrule appellant second issue.

### E. Cumulative Error

By his fourth issue, raised for the first time on appeal, appellant argues that the "cumulative effect of [trial] counsel's errors resulted in harm." Appellant cites *Chamberlain v. State* for the proposition that "[s]everal errors, even if harmless when separately considered, may be harmful in their cumulative effect." *See* 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). In *Chamberlain*, the appellant argued that the cumulative effect of several alleged errors by the trial court denied him due process and due course of law; however, the court found no error and stated it is "aware of no authority holding that non-

18

errors may in their cumulative effect cause error." *Id.*; *see Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009) ("[W]e have never found that 'non-errors may in their cumulative effect cause error.'").

Here, appellant claims that his trial counsel's errors cumulatively caused him harm so as to satisfy the second *Strickland* prong. Because we have overruled each of appellant's ineffective assistance claims based on his failure to satisfy the first *Strickland* prong, we conclude that appellant's "cumulative effect" argument is meritless. *See Chamberlain*, 998 S.W.2d at 238; *Vaughn v. State*, 888 S.W.2d 62, 74 (Tex. App.—Houston [1st Dist.] 1994) ("Because we have overruled all her points of error urging ineffective assistance of counsel, we find that these points have no merit."), *aff'd*, 931 S.W.2d 564 (Tex. Crim. App. 1996); *see also Gosalvez v. State*, No. 13-19-00266-CR, 2021 WL 921680, at *11 (Tex. App.—Corpus Christi–Edinburg Mar. 11, 2021, no pet.) ("Because we have found no error in our analysis of [appellant]'s previous issues, there is no error to cumulate, and we overrule [appellant]'s fourth issue.").

We overrule appellant's fourth issue.

### III.    ALLEGED JUDGMENT ERRORS

By his fifth and final issue, appellant contends that the trial court's judgment erroneously lists A.A.'s and A.T.'s ages as twelve years old at the time they were assaulted, "when the evidence showed A.T. was 14 and A.A. was 13 at the time of the offenses."

Count Five of the indictment lists A.T. as the relevant minor victim. The judgment on Count Five indicates that "the age of the victim is 14 years of age." Consequently, appellant's argument that the judgment erroneously lists A.T.'s age as twelve is mistaken.

19

The judgments on Counts Two through Four list A.A. as the relevant minor victim and indicate A.A.'s age as twelve. Appellant contends that the evidence adduced at trial shows that A.A. was, in fact, thirteen years old when she was assaulted. A.A. testified that she was "like 12" when appellant assaulted her, and thirteen when she stopped working at Safe Tax. A.T. and A.A. both testified that they worked at Safe Tax from the end of 2012 through January and August 2013, respectively. A.A., born in October 2000, would be twelve years old in December 2012 through August 2013. A.A.'s and A.T.'s mothers also testified that their daughters worked at Safe Tax in 2012 and 2013. By contrast, Acosta and Ruby Alonzo testified that A.T. and A.A. worked at Safe Tax in 2013 and 2014.

We have the power to modify a judgment to speak the truth when we are presented with the necessary information to do so. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); Tex. R. App. P. 43.2(b). In this case, we are not presented with the necessary information to pinpoint a specific date or year on which the relevant offenses occurred. *See also Klein v. State*, 273 S.W.3d 297, 303 n.5 (Tex. Crim. App. 2008) (noting that the State is not required to prove the specific date the offense occurred when an "on or about" date is alleged within the indictment); *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.) ("The victim's description of what happened to [her] need not be precise, and [she] is not expected to express [herself] at the same level of sophistication as an adult.") (citing *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (noting that courts give wide latitude to the testimony given by child victims of sexual abuse)). Accordingly, we are unable to modify the trial court's judgment, as appellant requests.

20

We overrule appellant's fifth issue.

## IV.  CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
17th day of March, 2022.